783 P.2d 809

**STATE of Arizona, Appellee,**

v.

**Larry Vernon THOMASON, Appellant.**

**No. 1 CA–CR 11915.**

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 22, 1989.

Review Denied Dec. 19, 1989.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div., Diane M. Ramsey, Asst. Atty. Gen., Phoenix, for appellee.

John C. Williams, Prescott, for appellant.

## OPINION

BROOKS, Judge.

Appellant (defendant) was charged by indictment with one count of first degree murder. Following a jury trial, he was found guilty of second degree murder, as a lesser included offense, and was sentenced to an aggravated term of eighteen years' imprisonment. The sole issue on appeal is whether the trial court erred by refusing to give a jury instruction based on A.R.S. § 13–411.[1] We find no error.

---

1. A.R.S. § 13–411 provides:
 *Justification; use of force in crime prevention*
 A. A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of arson of an occupied structure under

§ 13–1704, burglary in the second or first degree under § 13–1507 or 13–1508, kidnapping under § 13–1304, manslaughter under § 13–1103, second or first degree murder under § 13–1104 or 13–1105, sexual conduct with a minor under § 13–1405, sexual assault under § 13–1406, child molestation under § 13–1410, armed robbery under § 13–1904,

FACTS

Defendant is a mechanic, inventor, and businessman in the construction industry. He owns a patent on cast-in-place pipe machinery, which forms concrete irrigation pipe as the machine travels along the ditch dug for the pipe. Defendant had several business dealings with Kokosing Construction Co. (Kokosing) and was well-acquainted with Brad Burgett, the manager of Kokosing's western division in Phoenix. At the time of the incident at issue in this case, Kokosing was building a cast-in-place machine, which defendant believed to be an infringement of his patent rights. Acting on this belief, defendant decided to take photographs of Kokosing's machine in order to prove patent infringement. Defendant and the state presented conflicting versions of the events that followed.

The state's evidence showed that on the morning of Saturday, October 26, 1985, several of Kokosing's employees noticed defendant walking around the Phoenix premises taking pictures. Duane Rupp and two other employees were working on the cast-in-place machine. Brad Burgett was in his office next to the machine shop where Rupp and the others were working. One of the employees confronted defendant, who responded "Brad knows I'm here." Burgett then came out of his office and began conversing with defendant inside the shop. What began as a conversation turned into an argument. Defendant drew a gun and shot at Burgett three times, hitting him twice. Burgett fell to the floor, face down. Medical evidence later demonstrated that it was one of these two shots that killed Burgett. Rupp tried to go to Burgett's aid, but defendant pointed the gun at him and ordered him to lie down. While Rupp was down, defendant walked over to where Burgett lay and shot him in the back four more times. Defendant ordered Rupp to stay on the ground, and then he fled the scene. The next day,

defendant surrendered himself to a Phoenix police officer.

Defendant's version of these events was substantially different. His defense was a combination of self-defense and insanity. He testified that when he and Burgett began to argue, they were both angry. Defendant stated that Rupp was "lurking" around the shop, keeping an eye on them. At one point, defendant testified, Rupp reached down, picked up a piece of scrap metal, and started walking toward him. Defendant was afraid, so he pulled the gun and ordered Rupp to stop. Burgett and Rupp were glancing at each other and defendant believed that they were about to jump him. Defendant pointed the gun alternately at Burgett, who stood in front of him, and at Rupp, who stood to defendant's left. He was pointing the gun at Rupp, holding him at bay when, believing that Burgett was about to attack him, he turned and pointed the gun at Burgett. Rupp chose that moment to leap at defendant, whereupon the gun went off, shooting Burgett. Defendant did not recall shooting three times. After he fired, defendant once again pointed the gun at Rupp and ordered him to stop. Rupp got down on the floor. Defendant was afraid that the other employees might be waiting in ambush. At that moment, he saw what he described as a "blinding light." After that, he remembered nothing until he "woke up" standing over Burgett's body. He realized that he had shot Burgett again, and he fled.

Two expert witnesses, testifing on behalf of the defendant, stated that he suffered from a preexisting paranoid personality disorder which turned into a brief reactive psychosis at the time of the shooting. Two experts for the state were of the opinion that, although defendant did suffer from a paranoid personality disorder, he was not insane at the time of the shooting and knew the nature and consequences of his act.

or aggravated assault under § 13–1204, subsection A, paragraphs 1 and 2.

B. There is no duty to retreat before threatening or using deadly physical force justified by subsection A of this section.

C. A person is presumed to be acting reasonably for the purposes of this section if he is acting to prevent the commission of any of the offenses listed in subsection A of this section.

The jury received instructions on both self-defense and insanity. Defendant has no quarrel with those instructions. However, he argues that he was also entitled to an instruction on "crime prevention" based upon A.R.S. § 13–411. In that regard, he requested that the court give the following instruction:

A. A person is justified in threatening or using both physical force and deadly physical force against another if and to the exent a reasonable person, in the defendant's situation would believe the physical force or deadly physical force is immediately necessary to prevent the other's commission of aggravated assault under § 13–1204, subsection A, paragraph 1.

B. There is no duty to retreat before threatening or using deadly physical force justified by subsection A of this section.

C. A person is presumed to be acting reasonably for the purposes of this section if he is acting to prevent the commission of aggravated assault.

This instruction is verbatim from § 13–411, except that the enumerated crimes other than aggravated assault have been omitted.

Defendant argued to the trial court that because he was preventing an aggravated assault, which he believed was about to be committed upon him by Burgett and Rupp, the situation fit within the statute. He also argued that the crime prevention instruction differed from self-defense because under the self-defense statutes, A.R.S. §§ 13–404 and 13–405, he could use deadly physical force only to repel deadly physical force, whereas under the crime prevention statute he was permitted to use deadly physical force to prevent an aggravated assault. The prosecutor merely argued that the evidence did not support the applicability of § 13–411. The trial court refused the instruction without comment.

## ARGUMENTS

On appeal, defendant continues to argue that the facts of this case fit within § 13–411. Because the jury was not in-structed accordingly, he points out that he was deprived of the "no duty to retreat" provision of § 13–411(B) as well as the presumption in § 13–411(C) that one preventing a crime is acting reasonably. In other words, he contends that the self-defense instruction alone was not an adequate or complete statement of the defenses available to him.

The state answers by urging that defendant's requested instruction on crime prevention was adequately covered by the instruction on self-defense. The state does not address the fact that the instruction on self-defense did not include the absence of a duty to retreat or the presumption of reasonableness to which defendant would have been entitled under the crime prevention statute. We do not reach this issue, however, since we affirm the trial court's refusal of the instruction on other grounds. We find that § 13–411 is applicable only to persons protecting the home, its contents, or the residents within. Therefore, given the facts of the case before us, defendant was not entitled to the instruction he sought.

## APPLICABILITY OF THE CRIME PREVENTION STATUTE—A.R.S. § 13–411

On its face, § 13–411 seems to conflict with the other sections in Chapter 4 of the criminal code dealing with justification defenses. The other sections provide for the use of nondeadly and deadly physical force in self-defense, §§ 13–404 and –405, defense of a third person, § 13–406, defense of premises, § 13–407, defense of property, § 13–408, and law enforcement, §§ 13–409 and –410. Section 13–411, however, differs somewhat from these other sections. Under § 13–411, the only limitation upon responding with deadly force is the reasonableness of the response. The other justification defenses require an immediate threat to personal safety as a prerequisite to retaliation with deadly force. Section 13–411 is also more permissive in certain situations because not all of the enumerated crimes are inherently life-threatening, e.g., second degree burglary. *See* Gerber, *Criminal Law of Arizona* 64–66 (1978). Further, § 13–411(C) provides a presumption of reasonableness which is not avail-

able under any of the other justification sections of our criminal code.

It is also apparent, as this case clearly illustrates, that § 13–411 may overlap with the other sections in Chapter 4. One who is preventing the kidnapping of another is also defending a third person; one who is preventing arson or burglary is, at the same time, defending premises; one who is preventing armed robbery is defending both property and himself; and one who is resisting one's own murder or aggravated assault, as defendant claims here, is also defending himself. Thus, this case presents us with a clear conflict. Which statute applies, self-defense or crime prevention?

 Courts construe seemingly conflicting statutes in harmony when possible. *Baker v. Gardner*, 160 Ariz. 98, 101, 770 P.2d 766, 769 (1988); *State v. Perkins*, 144 Ariz. 591, 699 P.2d 364 (1985), *overruled on other grounds, State v. Noble*, 152 Ariz. 284, 731 P.2d 1228 (1987). A statute should be explained in conjunction with other statutes which relate to the same subject or have the same general purpose. *State ex rel. Larson v. Farley*, 106 Ariz. 119, 471 P.2d 731 (1970). In furtherance of such harmonization, courts should review the history of the various sections in order to ascertain the intent of the legislature and construe the statutes to further that intent. *So. Pacific Co. v. Gila County*, 56 Ariz. 499, 503, 109 P.2d 610, 614 (1941); *Baker v. Gardner*, 160 Ariz. at 101, 770 P.2d at 769.

The entire justification chapter of the criminal code, including § 13–411, was enacted in 1977 with the adoption of a new criminal code. Section 13–411 was substantially the same as it is now, except for some minor differences in the enumerated felonies and the absence of current subsection (C). In 1983, however, a major amendment was enacted. This amendment added subsection (C), which gives the preventor of crime a presumption of reasonableness in his actions. More significantly, the legislature adopted and the governor approved the following "Declaration of policy":

> The legislature finds that homes of Arizona residents are being burglarized and violated at an alarming and unacceptable rate that is endangering the res-

idents' safety, health and property, thereby depriving them of their safe and peaceful enjoyment of their homes.

> It is the legislative intent to establish a policy by this law giving notice to all citizens, law enforcement personnel and the state courts that a person's home, its contents and the residents therein shall be totally respected and protected in Arizona, and that the law enforcement officials and courts shall apply this and all other applicable criminal laws relating to the protection of the home and its residents promptly and severely so as to restore the total sanctity of the home in Arizona.

Laws 1983, Ch. 255, § 1.

 Statutes should be read in the light of their purpose, and should not be construed without regard to their aim. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983); *State Bd. of Directors for Jr. Colleges v. Nelson*, 105 Ariz. 119, 460 P.2d 13 (1969). We rely upon the strong policy statement enacted by the legislature for our construction of § 13–411. Accordingly, we restrict the application of § 13–411 to cases which would come within that policy statement. That is, the defense is available only when a home, its contents, or the residents therein are being protected by the use or threatened use of physical force or deadly physical force against another. Such a restriction ameliorates the overlap and conflict of § 13–411 with the other justification statutes and furthers the legislative objective.

With this holding we end our inquiry and leave further construction of the statute for another day. Defendant here was clearly not entitled to an instruction based on § 13–411. Therefore, the trial court's refusal to give the instruction was not error.

Affirmed.

JACOBSON, P.J., and FIDEL, J., concur.