83 P.3d 618

**STATE of Arizona, Appellee,**

v.

**Jason Everette LONG, Appellant.**

**No. 1 CA–CR 02–0960.**

Court of Appeals of Arizona, Division 1, Department D.

Feb. 3, 2004.

Review Denied June 29, 2004.

---

4. Raven Rock's request for attorneys' fees is denied because it is not the prevailing party.

* The Honorable Sherry K. Stephens, a judge of the Superior Court of Maricopa County, was authorized to participate as a Judge *Pro Tempore* of the

Arizona Court of Appeals by order of the Chief Justice of the Arizona Supreme Court pursuant to Article 6, Section 31 of the Arizona Constitution and A.R.S. § 12–145 *et seq* (2003).

Terry Goddard, Attorney General by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Ballecer and Segal by Natalee Segal and Neal W. Bassett, Phoenix, Attorneys for Appellant.

1. *See* U.S. Const. amend. VIII ("Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."); Ariz. Const. art. 2, § 15 ("Excessive

## OPINION

WINTHROP, Judge.

¶ 1 A jury convicted Jason Everette Long of Count One, sexual exploitation of a minor under the age of fifteen; Count Two, sexual conduct with a minor under the age of fifteen; and Count Three, sexual conduct with a minor aged fifteen or older. The trial court sentenced Long to consecutive terms of twenty years' imprisonment in the Arizona Department of Corrections for Count One; twenty-four years' imprisonment for Count Two; and lifetime probation for Count Three. Long contends that the twenty-year sentence imposed for Count One violates the provisions of the United States and Arizona constitutions prohibiting cruel and unusual punishment,[1] and he argues that the trial court abused its discretion in sentencing him to an aggravated term of imprisonment. For the following reasons, we affirm Long's convictions and sentences.

## BACKGROUND

¶ 2 We review the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *State v. Kiper,* 181 Ariz. 62, 64, 887 P.2d 592, 594 (App.1994).

¶ 3 A grand jury indicted Long, charging him with three counts of sexual exploitation of a minor under fifteen years of age, class two felonies and dangerous crimes against children (initially Counts One through Three); one count of sexual conduct with a minor under the age of fifteen, a class two felony and dangerous crime against children (initially Count Four); and one count of sexual conduct with a minor aged fifteen years or over, a class six felony (initially Count Five). The trial court later granted the State's motion to amend the date of offense alleged in Count One, dismiss Counts Two and Three, and renumber Counts Four and Five as Counts Two and Three. A jury trial ensued.

¶ 4 The following evidence was presented at trial: The victim ("Erika") was born on

bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.").

January 27, 1986. Long met Erika's mother ("Diana") in December 1993 and began a relationship with Diana. In August 1994, Diana and her children, Erika and Matthew, moved from Arizona to Idaho with Long. They then moved to Oregon and, in August 1995, Long, Diana, and Matthew returned to Arizona; Erika moved to Minnesota to live with her grandmother. In October 1999, Long, Diana, and Matthew moved to Ohio. In January 2000, Erika moved in with them.

¶ 5 While living in Ohio, Diana rented a computer with a "web camera" that Long principally used and was kept in their bedroom. Diana often worked long hours, leaving Long at home alone or with the children.

¶ 6 On January 26, 2000, the day before Erika's fourteenth birthday, Long demanded that Erika engage in sex with him or "he would kill [her] mom and the people closest to [her]." Erika, fearful of Long's threat, "went along with what he said," and engaged in sexual intercourse with Long. Long and Erika engaged in sexual conduct "a lot" while in Ohio.

¶ 7 In November 2000, Long, Diana, Erika, and Matthew returned to Arizona, initially staying with Diana's friends, Audry and T.R. On January 19, 2001, Diana went looking for a job, and Erika stayed home from school. Erika was sleeping on the sofa, and Long approached her and demanded sex. Long threatened Erika that, if she refused, Diana "wouldn't have to worry about looking for a job because she wouldn't be around anymore." Long and Erika then engaged in sexual intercourse.

¶ 8 On January 26, 2001, the day before Erika's fifteenth birthday, Long, Diana, Erika, and Matthew moved in with Long's mother for two to three weeks. While they were living with his mother, Long and Erika continued to engage in sexual intercourse. In mid-February 2001, Diana rented a house, and she, her children, and Long moved into the house. In May 2001, a few months after Erika turned fifteen, Erika and Long again engaged in sexual intercourse.

¶ 9 In late September 2001, Diana first became aware that some sort of relationship existed between Long and Erika because she found a letter from Long to Erika, in which Long professed his love to her. A couple of days later, Diana confronted Long and ordered him to move out within two weeks. Long tried to convince Diana that she had misinterpreted the letter, but she refused to reconsider and, about one week later, Long began to pack his belongings.

¶ 10 On the last Sunday in September, Long decided that he would not leave, and an argument ensued between Long and Diana. Long said that he would let Erika decide whether he had to leave, and he awakened her. Diana called 911 and, while she was talking to the police, Long grabbed some weapons from the house and threatened to break the windows. The police arrived and took Long away.

¶ 11 Diana eventually obtained a restraining order and decided to pack up the rest of Long's belongings. While Diana was packing, she found some CDs. Diana wanted copies of any family photographs that were on the CDs, but she no longer had her computer, so she took the CDs to T.R. and asked that he copy any family photos for her.

¶ 12 T.R. later telephoned Diana and told her that there was something she needed to see. Diana returned to T.R.'s house, and T.R. began playing a CD video that he found amongst Long's CDs. The video was made in the master bedroom of the house in Ohio and shows Long adjusting and focusing the camera on himself, then walking over to Erika, who appears to be asleep, and waking her. The video (which was played for the jury) also shows Long and Erika engaging in sexual intercourse. Erika was fourteen years old at the time this sexual conduct occurred.

¶ 13 Diana did not view the entire video. Instead, she called the Maricopa County Sheriff's Office and gave the CD and some of Long's other belongings to a deputy sheriff. The video on the CD was the basis for the subsequent sexual exploitation of a minor charge.

¶ 14 Some time later, Maricopa County Sheriff's detectives executed a search warrant on Diana's house. The detectives found a letter from Long to Erika in a silver metal box in Erika's bedroom. In the letter, Long

makes numerous references to sexual activity with Erika, both in Ohio and Arizona.

¶ 15 Additionally, another CD acquired by detectives contained a document entitled "Wish" that was initially created on December 28, 1999 (shortly before Erika moved in with Long, Diana, and Matthew in Ohio), and begins with the heading, "Things to Do to or with Erika.... If I can." The sexually explicit document lists twenty sexually related activities, and beside eighteen of those activities, the word "DONE" is typed in. Additionally, the document contains what appears to be a sort of diary, or running commentary, of Long's sexual activities with Erika.

¶ 16 Long was arrested and subsequently interrogated by a detective with the Maricopa County Sheriff's Office. The detective informed Long that she was investigating a sex crime involving a minor, and Long stated "that it was probably Erika because she was [almost] 16." When asked whether he remembered having sexual intercourse with Erika or making the video, Long eventually replied, "I didn't remember making the video." Long also admitted "that he was 27 and Erika was 15, and he knew it was wrong, but he couldn't help who he fell in love with"; he eventually admitted engaging in sexual relations with Erika. Long stated that he did not remember writing the letters to Erika and claimed that, although he "did pressure her," he never "forced" her to engage in sex. When asked to estimate how many times he had engaged in sex with Erika, Long told the detective that he "[c]ouldn't guess," and that he knew it was illegal to engage in sex with Erika, but that he loved her.

¶ 17 The jury found Long guilty of Count One, sexual exploitation of a minor under the age of fifteen, a class two felony and dangerous crime against children, in violation of Arizona Revised Statutes ("A.R.S.") section 13–3553(A)(2), (C) (2001 & Supp.2003); Count Two, sexual conduct with a minor under the age of fifteen, a class two felony and dangerous crime against children, in violation of A.R.S. § 13–1405 (2001); and Count Three, sexual conduct with a minor aged fifteen years or older, a class six felony in violation of A.R.S. § 13–1405. Long filed a motion to declare the sentencing provisions of Arizona's sexual exploitation statute unconstitutional as cruel and unusual punishment. The trial court denied the motion.

¶ 18 At sentencing, the trial court found three aggravating circumstances and "no significant mitigati[n]g circumstances," then sentenced Long to consecutive aggravated terms in the Arizona Department of Corrections of twenty years for Count One and twenty-four years for Count Two, and lifetime probation for Count Three. The court also credited Long for 223 days of pre-sentence incarceration.

¶ 19 Long filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(3) (2001).

## ANALYSIS

### I. Constitutionality of Appellant's Sentence

¶ 20 The trial court sentenced Long to a twenty-year term of incarceration for Count One, sexual exploitation of a minor under fifteen years of age. The conviction for Count One was based on Long's possession of the CD that showed his sexual encounter with Erika. The sentencing range available to the trial court was ten to twenty-four years, which had to be served consecutively to Long's other convictions. *See* A.R.S. §§ 13–604.01(D), (F), (K) (2001 & Supp.2003), 13–3553(C).

■■■■ ¶ 21 Long contends that the consecutive twenty-year sentence that he received for Count One violates the prohibition against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution and Article 2, Section 15, of the Arizona Constitution.[2] He contends

**2.** The State and Long appear to agree that we should interpret Arizona's cruel and unusual punishment provision the same as the related provision in the federal constitution. Because we do not find in this case a compelling reason to interpret the provisions differently, we treat the provisions as being coterminous. *See State v. Noble*, 171 Ariz. 171, 173, 829 P.2d 1217, 1219 (1992).

that his sentence is so grossly disproportionate to his crime as to be unconstitutional.

¶ 22 The Eighth Amendment may be applied to lengthy sentences of incarceration in non-capital cases. *Lockyer v. Andrade,* 538 U.S. 63, 72, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003). However, successful challenges to the proportionality of particular sentences are exceedingly rare. *Solem v. Helm,* 463 U.S. 277, 289–90, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), *overruled on other grounds by Harmelin v. Michigan,* 501 U.S. 957, 965, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (plurality opinion), *as recognized in, e.g., United States v. Frazier,* 981 F.2d 92, 95 (3rd Cir.1992).

¶ 23 The State contends that the Arizona Supreme Court's decision in *State v. Taylor,* 160 Ariz. 415, 773 P.2d 974 (1989), is binding and compels us to reject Long's argument. This court is bound by decisions of the Arizona Supreme Court and has no authority to overturn or refuse to follow its decisions. *See, e.g., State v. Hoover,* 195 Ariz. 186, 188–89, ¶ 14, 986 P.2d 219, 221–22 (App.1998).

¶ 24 In *Taylor,* our supreme court rejected the argument that sentences imposed pursuant to the sexual exploitation of a minor statute, A.R.S. § 13–3553, and mandatorily enhanced by A.R.S. § 13–604.01, amounted to cruel and unusual punishment. 160 Ariz. at 419, 422–23, 773 P.2d at 978, 981–82. However, we do not find *Taylor* entirely dispositive in the case before us. Although *Taylor* arguably supports a finding that the sentencing ranges associated with the crime of sexual exploitation of a minor are constitutional on their face, we note that the *Taylor* court limited its holding regarding the constitutionality of Taylor's sentence to the facts of that case, *id.* at 423, 773 P.2d at 982, and the argument presented by Long here is that the sentencing statutes are unconstitutional as

applied to him.[3] Accordingly, we consider whether the sentencing statutes are unconstitutional as applied to Long in this case.

¶ 25 Long relies on our supreme court's jurisprudence in *State v. Bartlett,* 164 Ariz. 229, 792 P.2d 692 (1990) (*Bartlett I* ), *vacated by Arizona v. Bartlett,* 501 U.S. 1246, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991); and *State v. Bartlett,* 171 Ariz. 302, 830 P.2d 823 (1992) (*Bartlett II* ), to argue that this court should conduct an individualized analysis of the facts and circumstances of his case to determine whether his sentence is grossly disproportionate to the crime, and to compare his sentence to the sentence that would be imposed for other crimes in Arizona (an intra-jurisdictional analysis) and in other states for the same crime (an inter-jurisdictional analysis). The State argues that *State v. DePiano,* 187 Ariz. 27, 926 P.2d 494 (1996), a case subsequent to the *Bartlett* jurisprudence that disapproved of the *Bartlett II* court's conclusion requiring an individualized analysis, provides the proper test. *See id.* at 30, 926 P.2d at 497. However, the Arizona Supreme Court recently overruled *DePiano. See State v. Davis,* 206 Ariz. 377, 384, ¶ 34, 79 P.3d 64, 71 (2003). Accordingly, we follow the guidance provided to us by our supreme court in *Davis.*

¶ 26 We must determine whether Long's sentence is so grossly disproportionate to the crime as to violate the constitutional prohibition against cruel and unusual punishment. *See id.* at 379, 383, ¶¶ 1, 29, 79 P.3d at 66, 70. We analyze gross disproportionality based on the sentence imposed. *See id.* at 381 n. 2, ¶ 13, 79 P.3d at 68 n. 2.

¶ 27 In assessing the constitutionality of Long's sentence, we "examine the crime, and, if the sentence imposed is so severe that it appears grossly disproportionate to the offense, [we] must carefully examine the

**3.** Long also argues that the *Taylor* court dealt with Arizona's penalties for non-commercial production, not possession, of pornography involving minors, and thus should be distinguished. However, the *Taylor* decision states that, as part of his sentence, Taylor received consecutive sentences for possession of each of fifty photographs. *Taylor,* 160 Ariz. at 419–20, 773 P.2d at 978–79. In analyzing whether the total sentence

imposed on Taylor was cruel and unusual, our supreme court drew no distinction between possession and production of child pornography, and the court upheld consecutive sentences for possession of each of the fifty photographs. *See id.* at 422–23, 773 P.2d at 981–82. We therefore disagree that *Taylor* may be distinguished on this basis argued by Long.

facts of the case and the circumstances of the offender to see whether the sentence is cruel and unusual." *Id.* at 384, ¶ 34, 79 P.3d at 71. Thus, we conduct an individualized analysis, examining the specific circumstances of this case. *See id.* at ¶¶ 33–34 ("The legislature permits this court to reduce lengthy sentences when 'the punishment imposed is greater than under the circumstances of the case ought to be inflicted.' ") (quoting A.R.S. § 13–4037(B) (2001)).

¶ 28 We first determine whether an *inference* of gross disproportionality between Long's offense and his sentence can be drawn. *See id.* at ¶ 35. Long was sentenced to a total of forty-four years, twenty-four for sexual conduct with Erika while she was under the age of fifteen and, for the count in question, twenty years for possessing the CD video of a previous sexual encounter with her. Accordingly, we examine the individualized factors present in Long's case, particularly focusing on the factors related to his possession of the video; that is, we consider the total circumstances surrounding the crime. *See id.* at ¶¶ 33–34. In conducting our examination, we consider our supreme court's analysis in *Davis,* which relied on many of the factors previously enunciated in *Bartlett I* and *II. Id.* at 381–382, 384–385, ¶¶ 16, 24, 36–37, 79 P.3d at 68–69, 71–72.

¶ 29 Long argues that he merely possessed a CD that depicted him engaging in consensual sexual intercourse with Erika, a fully sexually developed fourteen-year-old. He states that no evidence exists that he attempted to distribute the CD or its contents, that no physical injuries occurred, and that this court should consider only the harm caused by his possession of the CD, not any separate harm arising out of his sexual conduct convictions. In support of his argument, he notes that the trial court found that "[t]he acts depicted on the CD were consensual acts."

¶ 30 Long also notes his lack of a criminal record, except for a traffic ticket for driving without a license. Additionally, he mentions that Dr. Steven Gray prepared a Risk Assessment for the court that stated it is normal for adult men to be attracted to adolescent girls aged fourteen to seventeen.[4] And, as our supreme court has stated, sexual conduct among post-pubescent teenagers is a relevant factor we must consider. *Id.* at 385 n. 5, ¶ 36, 79 P.3d at 72 n. 5. Long concludes that he was simply caught up in the very broad sweep of the governing statute.

¶ 31 However, several factors support affirming the sentence. Long was significantly older than Erika, and had known her at least since he moved in with Diana, when Erika was eight years old. The facts support the inference that he had established a position of trust as a quasi-parental figure. No evidence exists that he was found to be immature, either intellectually or emotionally.

¶ 32 Also, Erika's testimony was that Long threatened harm to Diana unless Erika submitted to his sexual requests. These prior threats therefore eventually led to the sexual encounter on the CD, produced by Long, and enabled him to possess the CD. Additionally, although Long contends that Erika consented to engaging in the sexual acts depicted on the CD, Erika testified that she was unaware that he was videotaping the acts. Further, although Long argues that no evidence exists that he transmitted the contents of the CD to the Internet, we nonetheless are aware that Erika could well be emotionally harmed by the knowledge that he could have done so and her belief that he did so.

¶ 33 We also cannot conclude that Long's conduct was "swept up" in the broad statutory terms that triggered the sentence imposed. This was not the factual situation presented in *Davis;* rather, we find Long's

---

4. The State argues that Dr. Gray's report was not made a part of the record on appeal and should therefore not be considered. However, the doctor's report and the statement at issue were discussed by defense counsel, the prosecutor, and the judge at sentencing. In fact, the prosecutor conceded that "on page 20 [of the Risk Assessment], Dr. Gray talks about how it is considered normal for adult males to be attracted to adolescent females. And he does quantify it. It is age 14 to 17." We therefore consider the discussion of the statement of Dr. Gray as part of the record. (We also note that the prosecutor further argued that Dr. Gray has previously testified "that there is a big difference in being attracted to a female adolescent age 14 to 17 and acting on it.")

commission of the acts on the CD more analogous to a parental figure engaging in rape with a trusting ward and his possession of the CD akin to a trophy commemorating his commission of those acts. *See id.* at 384–385, ¶ 36, 79 P.3d at 71–72. Moreover, no indication exists that the trial judge or others "recognized the injustice" of the sentence. *Id.* at 385, ¶ 37, 79 P.3d at 72. In fact, the trial court sentenced Long to an aggravated sentence. We conclude that, given the circumstances of this offense, the sentence imposed in this case is neither grossly disproportionate to his crime, nor does it violate either the state or federal constitution.

¶ 34 Long also argues that intra-jurisdictional and inter-jurisdictional comparisons of his sentence validate his argument that his sentence is grossly disproportionate. However, because we find no inference of gross disproportionality, we need not conduct the intra- and inter-jurisdictional analyses requested by Long, *see Harmelin,* 501 U.S. at 1004–05, 111 S.Ct. 2680; *see also Davis,* 206 Ariz. at 385 n. 6, 397, ¶¶ 38, 102, 79 P.3d at 72 n. 6, 84, and we decline to do so.

## II. Imposition of an Aggravated Sentence

¶ 35 Long also maintains that, although his sentence was within the statutory limits, the trial court abused its discretion by imposing an aggravated sentence for his sexual exploitation of a minor conviction. He argues that the aggravating factors found by the trial court were inapplicable to the sexual exploitation charge and the trial court failed to consider mitigating circumstances in sentencing him.

¶ 36 A trial court must set forth reasons in support of each aggravating and mitigating circumstance it finds. *See* A.R.S. § 13–702(B) (2001 & Supp.2003); *State v. Harrison,* 195 Ariz. 28, 34–35, ¶ 32, 985 P.2d 513, 519–20 (App.1998), *aff'd,* 195 Ariz. 1, 985 P.2d 486 (1999); *State v. Harvey,* 193 Ariz. 472, 476–77, ¶ 18, 974 P.2d 451, 455–56 (App. 1998). The trial court may consider and articulate any factor affecting the aggravation or mitigation of a sentence "that the

court deems appropriate to the ends of justice." A.R.S. § 13–702(C)(20) [5], (D)(5); *State v. Holstun,* 139 Ariz. 196, 198, 677 P.2d 1304, 1306 (App.1983).

¶ 37 Absent finding a clear abuse of discretion, we will not modify a sentence that is within the statutory limits. *State v. Sproule,* 188 Ariz. 439, 440, 937 P.2d 361, 362 (App.1996); *State v. Stewart,* 118 Ariz. 281, 283, 576 P.2d 140, 142 (App.1978). If sufficient and appropriate aggravating circumstances exist to justify imposition of an aggravated sentence, we will find no abuse of discretion in the trial court's decision to impose such a sentence. *See State v. Hardwick,* 183 Ariz. 649, 656, 905 P.2d 1384, 1391 (App.1995) (citation omitted).

### A. Aggravating Factors

¶ 38 Long argues that the aggravating factors found by the trial court (his abuse of a position of trust, multiple acts of sexual abuse over several years, and the extreme mental and psychological trauma to Erika) were inapplicable to his sexual exploitation of a minor conviction. He further characterizes the "multiple acts" aggravating factor as "irrelevant."

¶ 39 We find no abuse of discretion in the aggravating factors found by the trial court. A trial court may consider as an aggravating factor any factor relating to the character or background of the defendant or the circumstances surrounding the commission of the crime that increases the guilt or enormity of a crime or adds to its injurious consequences. *State v. Elliget,* 177 Ariz. 32, 36, 864 P.2d 1064, 1068 (App.1993) (citation omitted); *see also Harvey,* 193 Ariz. at 477, ¶¶ 22–23, 974 P.2d at 456. Thus, the court could properly consider Long's abuse of his position of trust and the multiple acts of sexual abuse over a prolonged period of time pursuant to subsection (C)(20) of A.R.S. § 13–702. These factors relate to Long's character and background, and such evidence may be used to aggravate his conviction. *See Elliget,* 177 Ariz. at 36, 864 P.2d at 1068.

5.  We cite the current subsection, which is identi-  cal to former A.R.S. § 13–702(C)(18).

¶ 40 Long also contends that the "mental trauma" aggravating factor is "inherent in the crime" and that an element of the crime may not be used as an aggravating factor at sentencing. *See State v. Germain,* 150 Ariz. 287, 290, 723 P.2d 105, 108 (App. 1986). Even if we assume *arguendo* that Long is correct, however, "[w]here the degree of the defendant's misconduct rises to a level beyond that which is merely necessary to establish an element of the underlying crime, the trial court may consider such conduct as an aggravating factor." *Id.; see also State v. Tinajero,* 188 Ariz. 350, 357, 935 P.2d 928, 935 (App.1997). We conclude that, pursuant to A.R.S. § 13–702(C)(9) and (20), the trial court properly considered the "extreme" mental and psychological trauma suffered by Erika as an aggravating factor beyond that merely necessary to establish any element of the offense. Accordingly, we find no abuse of discretion in the aggravating factors found by the trial court.

### B. Mitigating Factors

¶ 41 Long argues that the trial court failed to consider mitigating circumstances, such as Erika's age and her physical maturity, in sentencing him. However, "[t]he consideration of mitigating circumstances is solely within the discretion of the court." *State v. Webb,* 164 Ariz. 348, 355, 793 P.2d 105, 112 (App.1990) (citation omitted). In other words, the trial court need only consider evidence offered in mitigation; it need not find the evidence mitigating. *State v. Fatty,* 150 Ariz. 587, 592, 724 P.2d 1256, 1261 (App.1986). If evidence proffered in mitigation is not a specified mitigating circumstance set forth in A.R.S. § 13–702(D)(1)–(4), the trial court is not obligated to even consider the evidence, though, in its discretion, it may do so pursuant to A.R.S. § 13–702(D)(5). *State v. Anderson,* 199 Ariz. 187, 194, ¶ 40, 16 P.3d 214, 221 (App.2000).

¶ 42 Here, Erika's age and physical maturity were not factors the trial court was required to consider pursuant to A.R.S. § 13–702(D)(1)–(4); thus, the trial court's consideration of these factors was discretionary. The trial court found "no significant mitigati[n]g circumstances," indicating that the court considered whether any mitigating circumstances existed, but rejected the circumstances it considered as insignificant. Given the facts in this record, including the fact that Long compiled his "Wish" list before Erika had turned fourteen and moved to Ohio in January 2000, we do not find that the trial court abused its discretion by not finding Erika's age and physical maturity to be "significant" mitigating factors. We therefore conclude that, under the specific circumstances of this case, the trial court did not abuse its discretion in imposing an aggravated sentence for Long's conviction for sexual exploitation of a minor under the age of fifteen.[6]

### CONCLUSION

¶ 43 Long's convictions and sentences are affirmed.

CONCURRING: JON W. THOMPSON, Presiding Judge, and JOHN C. GEMMILL, Judge.

---

6. Long suggests in his reply brief that we reduce his sentence pursuant to A.R.S. § 13–4037(B), which allows an appellate court, on its own motion, to reduce an excessive sentence. We are aware that the power of this court to modify sentences should be tempered by the fact that the trial court has the best opportunity to observe and evaluate a defendant. *See State v. Patton,* 120 Ariz. 386, 388, 586 P.2d 635, 637 (1978). In the exercise of our discretion, we decline to reduce Long's sentence pursuant to A.R.S. § 13–4037. *See id.*