219 P.3d 274

**STATE of Arizona, Appellee,**

v.

**Sherman Kenneth HANEY, Appellant.**

**No. 1 CA–CR 08–0717.**

Court of Appeals of Arizona, Division 1, Department E.

Oct. 29, 2009.

---

Terry Goddard, Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, Phoenix, Attorney for Appellant.

## OPINION

SWANN, Judge.

¶ 1 Sherman Kenneth Haney ("Appellant") appeals his convictions of Aggravated Assault, a dangerous class three felony, and Misconduct Involving Weapons, a class four felony, asserting the trial court erred when it

failed *sua sponte* to instruct the jury on the justification of the use of force in crime prevention under A.R.S. § 13–411. We hold that a person who is prohibited by law from possessing deadly weapons is not entitled to the legal protection of A.R.S. § 13–411 when he uses a firearm. We therefore affirm.

## FACTS [1] AND PROCEDURAL HISTORY

¶ 2 On June 20, 2007, thirty-eight-year-old Silvestre [2] went to the hospital after he cut his hand with a power saw; he was accompanied by his mother, Regina. When Silvestre was finished at the hospital, Regina called her aunt to pick them up and drive them home. Appellant (who rented a room in the aunt's house) and the aunt arrived to drive them home. During the drive home, Appellant and Regina argued. Appellant told Regina that "if [she said] anything else to [him], when [he] got home to [his] gun, [he was] gonna blow [her] [expletive] tongue and teeth out ... [and that] he was going to put [her] in a dug when he got to his gun."

¶ 3 When they arrived at the aunt's house, Silvestre asked Appellant "whether he was going to get his gun." Silvestre told Appellant that he could not let him kill his mother. Appellant warned Silvestre that he had "something for [him] too." Regina attempted to intervene, and Appellant punched her twice on the side of her face, causing her to fall to the ground unconscious.

¶ 4 Thereafter, Appellant wrapped his arm around Silvestre and they both fell to the ground on the front lawn. Silvestre repeatedly punched Appellant in the face with his uninjured hand. A neighbor stopped the fight by separating the two.

¶ 5 After the neighbor intervened, both Appellant and Silvestre got to their feet, and Appellant went inside the house. Silvestre also went inside the house, but stayed just inside the front door. Appellant walked to his bedroom, picked up his girlfriend's gun, walked back toward the front door of the house and pointed the gun at Silvestre. Silvestre pleaded with Appellant, "Please don't shoot me," as he walked backwards out the front door onto the lawn.

¶ 6 Appellant shot Silvestre two or three times in the lower body, causing Silvestre to fall to the ground. When Silvestre fell to the ground, he yelled, "Please don't kill me." As Silvestre rolled onto his stomach, Appellant walked toward him and shot him two or three more times in his buttocks.

¶ 7 On July 11, 2007, Appellant was indicted for Aggravated Assault, a class three dangerous felony, and Misconduct Involving Weapons, a class four felony.

¶ 8 During trial, Appellant stipulated to the following: "The State and the defendant agree that on June 20, 2007, the defendant was a prohibited possessor under Arizona law, whose rights had not been restored and who was aware that he was a prohibited possessor."

¶ 9 On May 5, 2008, a jury found Appellant guilty of both counts and found the Aggravated Assault to be a dangerous offense. The jury also found as aggravators that the offense involved the infliction or threatened infliction of serious physical injury and that the offense caused physical, emotional or financial harm to the victim.

¶ 10 Appellant timely appeals. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and 13–4033(A)(1) (Supp. 2008).

## STANDARD OF REVIEW

¶ 11 The failure to request a jury instruction waives the issue on appeal absent fundamental error. *State v. Gendron*, 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991). Fundamental error is "error going to the foundation of a case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defen-

---

1. "We review the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant." *State v. Long*, 207 Ariz. 140, 142, ¶ 2, 83 P.3d 618, 620 (App.2004) (citing *State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App.1994)).

2. To protect the identity of the victims, we use only their first names.

dant could not possibly have received a fair trial." *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)). Because we conclude as a matter of law that a prohibited possessor is not entitled to the benefit of A.R.S. § 13–411 when he possesses and uses a deadly weapon, we find no error of any variety.

## DISCUSSION

■ ¶ 12 "With regard to jury instructions, fundamental error occurs 'when the trial judge fails to instruct upon matters vital to a proper consideration of the evidence.'" *State v. Edmisten*, 220 Ariz. 517, 522, ¶ 11, 207 P.3d 770, 775 (App.2009) (quoting *State v. Laughter*, 128 Ariz. 264, 267, 625 P.2d 327, 330 (App.1980)). It is also fundamental error for the trial judge to fail to instruct on vital matters "even if not requested by the defense." *State v. Johnson*, 205 Ariz. 413, 417, ¶ 11, 72 P.3d 343, 347 (App.2003) (quoting *State v. Avila*, 147 Ariz. 330, 337, 710 P.2d 440, 447 (1985)).

■■ ¶ 13 A justification instruction is warranted if it is supported by the "slightest evidence." *State v. Hussain*, 189 Ariz. 336, 337, 942 P.2d 1168, 1169 (App.1997) (citing *State v. Dumaine*, 162 Ariz. 392, 404, 783 P.2d 1184, 1196 (1989)). "A trial court, however, does not err in refusing to give a jury instruction that is an incorrect statement of the law, does not fit the facts of the particular case, or is adequately covered by the other instructions." *Id.* (citing *State v. Lambright*, 138 Ariz. 63, 74, 673 P.2d 1, 12 (1983), *overruled on other grounds by Hedlund v. Sheldon*, 173 Ariz. 143, 146, 840 P.2d 1008, 1011 (1992)).

¶ 14 Because a jury instruction is not required if it misstates the law, we must first examine whether Appellant, as an admitted prohibited possessor, can claim that the shooting was justified pursuant to A.R.S. § 13–411. In *State v. Thomason*, 162 Ariz. 363, 366, 783 P.2d 809, 812 (App.1989), this court found it necessary to construe an earlier version of A.R.S. § 13–411 to avoid conflict with other sections of the criminal code. Because Appellant contends that he was entitled to the benefit of the statute despite his legal status as a prohibited possessor, we find it necessary to construe the statute here.[3]

¶ 15 "When interpreting a statute, our goal is 'to fulfill the intent of the legislature that wrote it.'" *Hussain*, 189 Ariz. at 338, 942 P.2d at 1170 (quoting *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993)). To determine the legislative intent, we must examine the words of the statute, "the polic[ies] behind the statute[ ] and the evil[s] [it was] designed to remedy." *In re Estate of Winn*, 214 Ariz. 149, 151, ¶ 8, 150 P.3d 236, 238 (2007) (quoting *Calvert v. Farmers Ins. Co. of Ariz.*, 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985)).

¶ 16 A.R.S. § 13–411 (Supp.2008)[4] provides in relevant part:

A. A person is justified in threatening or using both physical force and deadly physical force against another if and to the extent the person reasonably believes that physical force or deadly physical force is immediately necessary to prevent the other's commission of burglary in the second or first degree under § 13–1507 or 13–1508, ... second or first degree murder under § 13–1104 or 13–1105, or aggravated assault under § 13–1204, subsection A, paragraphs 1 and 2.

---

**3.** *Thomason* resolved the statutory conflict by limiting the crime-prevention defense to factual settings in which a home, its contents or residents were being threatened by the use or threatened use of physical force or deadly physical force. 162 Ariz. at 366, 783 P.2d at 812. Seventeen years later, in 2006, the Legislature added subsection D to A.R.S. § 13–411. 2006 Ariz. Sess. Laws, ch. 199, § 3 (2d Reg. Sess.). That amendment effectively eliminates the conflict and overturns *Thomason* by providing that the defense "is not limited to the use or threatened use of physical or deadly physical force in a person's home, residence, place of business, land the person owns or leases, conveyance of any kind, or any other place in this state where a person has a right to be." A.R.S. § 13–411(D).

**4.** When the most recent version of the statute appears in the current supplement and no amendments material to this opinion have been made, we cite to the supplement.

¶ 17 This defense differs materially from other justification defenses such as self-defense, A.R.S. § 13–404, and defense of third persons, A.R.S. § 13–406, because those defenses limit the use of force to those situations in which force is reasonably and immediately necessary to repel force.[5] Section 13–411 contains no such limitation.[6]

¶ 18 A.R.S. § 13–402(A) provides: *"Unless inconsistent with the other sections of this chapter defining justifiable use of physical force or deadly physical force or with some other superseding provision of law,* conduct which would otherwise constitute an offense is justifiable when it is required or authorized by law." (Emphases added). This language governs justification defenses generally, and is consistent with the settled rule of statutory construction that "[i]n so far as the provisions of a special statute are inconsistent with those of a general statute on the same subject, the special statute will control." *Desert Waters, Inc. v. Superior Court (City of Tucson),* 91 Ariz. 163, 171, 370 P.2d 652, 657 (1962) (citing *Knape v. Brown,* 86 Ariz. 158, 342 P.2d 195 (1959); *Whitfield Trans., Inc. v. Brooks,* 81 Ariz. 136, 302 P.2d 526 (1956)).

¶ 19 Here, a more specific statute applies to Appellant. A.R.S. § 13–904(A) (Supp. 2008) provides that "[a] conviction for a felony suspends the following civil rights of the person sentenced: ... [5.] The right to possess a gun or firearm." The Legislature

has enacted no exceptions to that prohibition. And A.R.S. § 13–3102 (Supp.2008) provides that a person commits a felony by knowingly "[p]ossessing a deadly weapon or prohibited weapon if such person is a prohibited possessor." At trial, Appellant stipulated that he knew that he was a prohibited possessor.

¶ 20 A.R.S. § 13–105(33) (Supp.2008) provides: " 'Possess' means knowingly to have physical possession or otherwise to exercise dominion or control over property." When Appellant retrieved his girlfriend's gun, aimed it at Silvestre and shot him multiple times, he unquestionably exercised control over the gun, and therefore possessed it unlawfully. For that reason, he was charged and convicted in this case with Misconduct Involving Weapons.

¶ 21 A.R.S. § 13–411 provides that "[a] person is justified in ... using deadly physical force," but does not independently authorize *possession* of a deadly weapon. Were we to read the statute as Appellant urges, we would effectively create a broad exception to A.R.S. § 13–3102 that the Legislature has not enacted.[7] Such a holding would immunize convicted felons from the consequences of later criminal acts by permitting them to use deadly weapons that they are not allowed even to possess. Nothing in Arizona's criminal code suggests that the Legislature intended to allow prohibited possessors to use deadly weapons whenever

5. The jury was properly instructed on self-defense, and Appellant's entitlement to those other justification defenses is therefore not the subject of this opinion. But we note that self-defense has been characterized as a fundamental right, where proactive crime prevention has not. *See, e.g., State v. Britson,* 130 Ariz. 380, 385–86, 636 P.2d 628, 633–34 (1981). There is a material difference between the exercise of the fundamental right of self-defense and the use of firearms by prohibited possessors for proactive crime prevention purposes. Indeed, a holding permitting prohibited possessors to claim justification for the use of firearms in crime prevention would create a judicial exception to A.R.S. § 13–904(A) that would largely eviscerate its value in protecting the public from armed felons.

6. A.R.S. § 13–411 acts as a shield against criminal liability for crime *prevention,* not revenge. Even assuming *arguendo* that Appellant was legally eligible for the protection that A.R.S. § 13–

411 affords the general public, we question whether the statute would apply on these facts because of the gap between the time Appellant sustained his injuries on the front lawn and when he shot Silvestre. Though Appellant argues that he could reasonably anticipate that he might have suffered an additional assault in his home, we doubt this assertion. We need not resolve this factual question, however, because the instruction, if given, would have inaccurately stated the law.

7. The Legislature has the power to amend the statute to provide that felons who are prohibited by law from possessing firearms may nonetheless use them in crime prevention. But it has not done so, and we find no support anywhere in the existing criminal code for the notion that the Legislature intended to confer on convicted felons the same freedom to use firearms that it preserves for law-abiding citizens.

they deem such use necessary in exigent circumstances.

¶ 22 Our holding does not deprive a prohibited possessor of the benefit of A.R.S. § 13–411 in every case. The statute creates a defense for those who use "deadly physical force" in defined circumstances. "Deadly physical force" is defined as "force that is used with the purpose of causing death or serious physical injury or in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury." A.R.S. § 13–105(14). By contrast, A.R.S. § 13–3102 prohibits possession of "deadly weapons" by certain persons. A "deadly weapon" is defined more narrowly, as "anything designed for lethal use, including a firearm." A.R.S. § 13–105(15). Therefore, while we conclude that the Legislature did not *sub silentio* create a blanket license for convicted felons to use *firearms* in crime prevention, we also recognize that they retain the right to prevent crime through lawful means.

¶ 23 Because we hold that A.R.S. § 13–411 cannot be extended to eliminate criminal liability for those whose chosen method of crime prevention itself constitutes a felony, we conclude that the trial court did not err in failing *sua sponte* to instruct the jury in this regard.

## CONCLUSION

¶ 24 For the foregoing reasons, we affirm.

CONCURRING: JON W. THOMPSON, Presiding Judge.

JOHNSEN, Judge, specially concurring.

¶ 25 I concur in the result because, as the majority suggests, the evidence at trial did not support a crime-prevention instruction pursuant to A.R.S. § 13–411. *See supra* ¶ 17, n. 6.

¶ 26 I respectfully disagree, however, with the majority's conclusion that as a matter of law, a prohibited possessor pursuant to A.R.S. § 13–904(A) may not assert a defense under A.R.S. § 13–411 in connection with an otherwise justified use of a firearm. My view is that we should refrain from deciding that issue because it is not necessary to our resolution of the appeal. If we were required to resolve the issue, however, I would not agree with the majority's conclusion that in no circumstance is a crime-prevention defense pursuant to § 13–411 available to a prohibited possessor who uses a firearm.

¶ 27 Under the facts of this case, Silvestre, the victim, presented no objective threat that would have justified Appellant's use of deadly force. But under the majority's holding, a prohibited possessor who picks up another's pistol and fires it at an assailant who is blasting his way into a crowded room with a shotgun could be prosecuted for aggravated assault or attempted murder. I am concerned that by the majority's reasoning, a prohibited possessor likewise would be unable to assert a right of self-defense or defense of another under similar circumstances. *See* A.R.S. §§ 13–404, –405 (2007), –406. When an armed intruder threatens to kill a homeowner and the homeowner's children, the homeowner who defends his family by firing at the intruder with a gun is not guilty of attempted murder in the normal event because the shooting was justified, in self-defense and/or defense of another. But by the majority's reasoning, under the same circumstances, a homeowner who is a prohibited possessor would have no defense.[8]

¶ 28 I recognize that, as the majority observes, the legislature has not crafted an

---

**8.** The majority notes that the self-defense and defense-of-others provisions come into play only when the defendant reasonably believes force is immediately necessary to protect against another's use of physical force. *Supra* ¶ 17; *see* A.R.S. §§ 13–404, –405, –406. While A.R.S. § 13–411 omits specific reference to another's use of force, in my view that distinction is not significant because force or the threat of force commonly is used in committing many of the crimes encompassed by the statute. *See* A.R.S. § 13–411(A) (use of force justified when reasonably necessary to prevent, e.g., kidnapping, sexual assault, manslaughter, second-or first-degree murder, armed robbery and aggravated assault). The majority also notes that self-defense has been characterized as a fundamental right. *Supra* ¶ 17, n. 5. I do not understand that principle to necessarily limit the breadth of the majority's reasoning that a statutory justification defense is not avail able to a prohibited possessor who uses a firearm.

exception to the prohibited possessor statutes, A.R.S. §§ 13–904(A) and –3102(A)(4), to provide that one who may not possess a gun may do so when reasonably necessary to prevent a crime. But it seems to me that the majority itself extends those same statutes beyond their plain meaning when it concludes that the statutes preclude a prohibited possessor from using a gun to defend against a violent crime under A.R.S. § 13–411. Sections 13–904(A) and –3102(A)(4) prohibit the *possession* of a gun and deadly weapon, respectively. Neither statute specifically prohibits the *use* or *discharge* of a gun by a prohibited possessor under circumstances otherwise permitted by A.R.S. §§ 13–404, –405, –406 and –411. *Cf.* A.R.S. § 13–3102(A)(8) (prohibiting the use of a deadly weapon during the commission of certain felony offenses).[9] I do not mean that as a practical matter one can discharge a gun without possessing it, within the meaning of the prohibited possession statutes. I only mean that while a prohibited possessor who fires a gun may be guilty of misconduct involving weapons pursuant to A.R.S. § 13–3102(A)(4), if he does so under circumstances falling within A.R.S. § 13–411, he should not also be guilty of aggravated assault or attempted murder.

¶ 29 Finally, I do not believe that, as the majority warns, construing A.R.S. § 13–411 to permit the use of a firearm by a prohibited possessor means allowing prohibited possessors to use "deadly weapons whenever they deem such use necessary in exigent circumstances." *Supra* ¶ 21. Permitting a prohibited possessor to assert the crime-prevention defense pursuant to A.R.S. § 13–411 would permit that person to use a gun only under circumstances under which any other person would be justified under the law in doing so.

---

9. By the same token, A.R.S. §§ 13–404, –405, –406 and –411 do not expressly restrict those who may take advantage of the defense to persons who are not prohibited possessors. Each of those justification provisions provides that it applies to "a person" who acts in a certain manner, not to "a person who is not a prohibited possessor" who acts in a certain manner.