103 P.3d 298 (2004)
STATE of Arizona, Appellee,
v.
Morton Robert BERGER, Appellant.
No. 1 CA-CR 03-0243.
Court of Appeals of Arizona, Division 1, Department D.
December 14, 2004.
*299 Terry Goddard, Attorney General, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Robert A. Walsh, Assistant Attorney General, Phoenix, Attorneys for Appellee.
Ballecer and Segal, Phoenix By Natalee E. Segal and Laurie A. Herman, Scottsdale, Attorneys for Appellant.

OPINION
EHRLICH, Judge.
¶ 1 Morton Robert Berger appeals his twenty convictions and sentences for sexual exploitation of a minor based on his possession of child pornography. He argues (1) that to punish the possession of child pornography more than the indecent exposure depicted in the images violates the federal and state constitutional guarantees of the equal protection of the law; (2) that the legislative approach to the possession of child pornography when compared with its approach to the commercial production of child pornography also violates the guarantees of equal protection; (3) that the cumulative sentence violates the federal and state constitutional prohibitions against cruel and unusual punishment; and (4) that the severity of his sentences warrants reduction by this court. We conclude that the legislature's means of addressing the matter of child pornography is constitutional and that it is not appropriate for this court to reduce Berger's sentences. Accordingly, we affirm his convictions and sentences for reasons that follow.

*300 FACTUAL AND PROCEDURAL HISTORY

¶ 2 Berger was charged with thirty-five counts of sexual exploitation of a minor younger than fifteen years of age in violation of Arizona Revised Statutes ("A.R.S.") § 13-3553(A) (Supp.2004).[1] Each offense is a class 2 felony and dangerous crime against children punishable by a prison term of ten to twenty-four years without the possibility of probation, early release or pardon, and each sentence must be served consecutively. A.R.S. § 13-3553(C); see also A.R.S. §§ 13-604.01 (Supp.2004), 13-702 (Supp.2004).
¶ 3 In a trial motion challenging the constitutionality of A.R.S. § 13-3553, Berger contended that the sentencing scheme as applied to him constituted cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and Article 2, section 15 of the Arizona Constitution.[2] He specifically argued that there was a gross disproportionality between the offenses with which he had been charged and the mandatory minimum sentence facing him as a middle-aged first offender and a married teacher with children of his own who had no criminal history and who did "no more than possess images" produced and distributed by other, unknown individuals. He also maintained that the sentence he faced was grossly disproportionate when compared to sentences for other crimes in Arizona and to sentences for the same crime in other states.
¶ 4 The trial court denied the motion, relying in part on State v. DePiano, 187 Ariz. 27, 926 P.2d 494 (1996), cert. denied, 519 U.S. 1098, 117 S.Ct. 782, 136 L.Ed.2d 726 (1997).[3] It found, first, that the sentence was not grossly disproportionate given the societal harm of child pornography and, second, that the mandated imposition of consecutive sentences, each a minimum of ten years in prison, did not result in cruel and unusual punishment.
¶ 5 Upon the prosecutor's motion, the trial court dismissed fifteen counts of the indictment, and the jury found Berger guilty as charged in the remaining twenty counts. The court sentenced Berger to the minimum and mitigated sentence, twenty consecutive ten-year terms of imprisonment, and Berger appealed.

DISCUSSION

A. The Constitutional Guarantees of Equal Protection
¶ 6 Berger contends that imposing a punishment for the possession of child pornography that is more severe than the punishment for the act of indecent exposure being portrayed violates the federal and state constitutional guarantees of the equal protection of the law.[4] He also contends that his guarantee of equal protection is violated because the legislature imposed the same range of punishment both for sexual exploitation of a minor and for commercial sexual exploitation of a minor, although commercial sexual exploitation is a more serious crime. Constitutional challenges to a statute are reviewed de novo by this court. Martin v. Reinstein, 195 Ariz. 293, 301 ¶ 16, 987 P.2d 779, 787 (App.1999).
*301 ¶ 7 The state and federal equal-protection guarantees "have for all practical purposes the same effect[,]" Valley Nat'l Bank of Phoenix v. Glover, 62 Ariz. 538, 554, 159 P.2d 292, 299 (1945), and Berger does not contend otherwise. They "are designed to secure equal opportunity for those who are similarly situated." Martin, 195 Ariz. at 309 ¶ 49, 987 P.2d at 795; see State v. Navarro, 201 Ariz. 292, 298 ¶ 25, 34 P.3d 971, 977 (App.2001); Glover, 62 Ariz. at 554-55, 159 P.2d at 299-300. Equal protection, however, "does not require that all persons be treated alike, only that individuals within a certain class be treated equally and that there exist reasonable grounds for the classification." Navarro, 201 Ariz. at 298 ¶ 25, 34 P.3d at 977 (quoting In re Maricopa County Juv. Action No. J-72804, 18 Ariz.App. 560, 565, 504 P.2d 501, 506 (1972)).
¶ 8 The legal standard applicable to the legislature's distinctions between one who possesses child pornography and one who engages in acts of indecent exposure, and between one who engages in the sexual exploitation of a minor and one who engages in the commercial sexual exploitation of a minor, is the same: whether there is a rational basis for the distinction given that the statutory design implicates neither a suspect class nor a fundamental right. See City of Tucson v. Pima County, 199 Ariz. 509, 516 ¶ 21, 19 P.3d 650, 657 (App.2001).
Rational basis review imposes on Petitioners, as the parties challenging the constitutionality of the Act, the burden of establishing that the law is unconstitutional by demonstrating that there is no conceivable basis for the Act. A legislative enactment challenged under the rational basis test will pass constitutional muster unless it is proved beyond a reasonable doubt to be wholly unrelated to any legitimate legislative goal. Moreover, the law "need not be in every report logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and th[at] it might be thought that the particular legislative measure was a rational way to correct it."
Martin, 195 Ariz. at 309-10 ¶ 52, 987 P.2d at 795-96 (citations omitted); see State v. Smith, 166 Ariz. 450, 453, 803 P.2d 443, 446 (App.1990) (A statute fails if its classification is based on reasons "wholly irrelevant to the achievement of the state's objectives.") (Quoting Bryant v. Cont'l Conveyor Equip. Co., 156 Ariz. 193, 196-97, 751 P.2d 509, 512-13 (1988)); State v. Hammonds, 192 Ariz. 528, 531 ¶ 8, 968 P.2d 601, 604 (App.1998) ("[A] statute must be rationally related to furthering a legitimate governmental interest."); State v. McInelly, 146 Ariz. 161, 163, 704 P.2d 291, 293 (App.1985) (If the legislative reasoning is related to public health, safety or welfare, we will not question the legislature in passing the statute.).
¶ 9 "It is evident beyond the need for elaboration that a State's interest in `safeguarding the physical and psychological well-being of a minor' is `compelling.'" Osborne v. Ohio, 495 U.S. 103, 109, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (quoting New York v. Ferber, 458 U.S. 747, 756-58, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). The legislature's designation of possession of child pornography as a class 2 felony and dangerous crime against children is a legitimate statement from Arizona's elected representatives about the harm caused by such materials; it does not violate equal protection.
¶ 10 As to Berger's first contention, the class of persons who engage in acts of indecent exposure does pose a different harm than does the class of persons who possess child pornography. Contrary to an act of indecent exposure, which ends upon completion of the act, the victimization of a child continues when that act is memorialized in an image. See Ferber, 458 U.S. at 759, 102 S.Ct. 3348 ("[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." (Footnote omitted)); United States v. Norris, 159 F.3d 926, 929 (5th Cir.1998), cert. denied, 526 U.S. 1010, 119 S.Ct. 1153, 143 L.Ed.2d 219 (1999) ("Unfortunately, the `victimization' of the children involved does not end when the pornographer's camera is put away."). "The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and *302 mental health of the child." Osborne, 495 U.S. at 109, 110 S.Ct. 1691 (quoting Ferber, 458 U.S. at 756-58, 102 S.Ct. 3348); see State v. Hazlett, 205 Ariz. 523, 527 ¶ 11, 73 P.3d 1258, 1262 (App.2003) ("The crime is the abuse of the children." (Footnote omitted.)).
¶ 11 As to Berger's second contention, it is reasonable for the state legislature to conclude that the possession of child pornography drives that industry and that the production of child pornography will decrease if those who possess the product are punished equally with those who produce it. See Osborne, 495 U.S. at 109-110, 110 S.Ct. 1691 ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); id. at 111, 110 S.Ct. 1691 ("The State's ban on possession and viewing encourages the possessors of these materials to destroy them."); Ferber, 458 U.S. at 756-64, 102 S.Ct. 3348 (discussing reasons for prohibiting child pornography, including economic motive); Norris, 159 F.3d at 930 ("[T]here is no sense in distinguishing ... between the producers and the consumers of child pornography. Neither could exist without the other."); United States v. Ketcham, 80 F.3d 789, 793 (3rd Cir.1996) (Statute making criminal "subsequent transportation, distribution, and possession of child pornography discourages its production by depriving would-be producers of a market."); State v. Taylor, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989) (By penalizing possession and production equally, the legislature "convey[s] a statutory intent that the consumer of child pornography be dealt with severely."); State v. Emond, 163 Ariz. 138, 142, 786 P.2d 989, 993 (App.1989) ("[D]rying up the market is the only way to effectively combat the production of child pornography."). As the federal legislature has found, the possession of child pornography "inflames the desires of child molesters, pedophiles, and child pornographers." Norris, 159 F.3d at 930 (quoting Child Pornography Prevention Act of 1996, Pub.L. 104-208, § 121, 110 Stat. 3009-27); see also Osborne, 495 U.S. at 111, 110 S.Ct. 1691 ("Evidence suggests that pedophiles use child pornography to seduce other children into sexual activity." (Footnote omitted.)).
¶ 12 The State has more than a passing interest in forestalling the damage caused by child pornography; preventing harm to children is, without cavil, one of its most important interests. See, e.g., Osborne, 495 U.S. at 110-111, 110 S.Ct. 1691 ("Given the importance of the State's interest in protecting the victims of child pornography, we cannot fault [the State] for attempting to stamp out this vice at all levels in the distribution chain.... Indeed, 19 States have found it necessary to proscribe the possession of this material." (Footnote omitted.)). The legislature's designation of possession of child pornography as a more serious offense than the act of indecent exposure[5] and its refusal to distinguish between the commercial and non-commercial sexual exploitation of minors is rationally related to furthering the State's interest in protecting children. Berger's constitutional guarantees of equal protection are not violated.[6]

B. Whether Application of A.R.S. § 13-3553 Resulted in Cruel and Unusual Punishment
¶ 13 Berger argues that the application of A.R.S. § 13-3553(C) to him resulted in a cumulative sentence that is unconstitutionally cruel and unusual punishment. This challenge to the statute is reviewed de novo. Martin, 195 Ariz. at 301 ¶ 16, 987 P.2d at 787.
*303 ¶ 14 "[T]he Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." Ewing v. California, 538 U.S. 11, 21, 123 S.Ct. 1179, 1185, 155 L.Ed.2d 108 (2003) (quoting Rummel v. Estelle, 445 U.S. 263, 271, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)); see Solem v. Helm, 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (Eighth Amendment prohibits "sentences that are disproportionate to the crime committed."); see also Lockyer v. Andrade, 538 U.S. 63, 72, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (There is "one governing legal principle" in Eighth Amendment jurisprudence: "A gross disproportionality principle is applicable to sentences for terms of years."). While the "precise contours" of this proposition may be unclear, it nonetheless is applicable only in the "exceedingly rare" and "extreme" cases. Andrade, 538 U.S. at 73, 123 S.Ct. at 1173 (citing Harmelin v. Michigan, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment) (other citations omitted)); Rummel, 445 U.S. at 272, 100 S.Ct. 1133 ("Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.") (cited in Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680).
¶ 15 The judicial reserve in declaring punishments unconstitutional because cruel and unusual is consistent with the deference to which the legislature is due. Indeed, one of the principles of Eighth Amendment proportionality review directing Justice Kennedy's concurrence in Harmelin, that in turn guided the Court's analysis in Ewing, was "the primacy of the legislature." Ewing, 538 U.S. at 23, 123 S.Ct. at 1186 (quoting Harmelin, 501 U.S. at 1001, 111 S.Ct. 2680).
Our traditional deference to legislative policy choices finds a corollary in the principle that the Constitution does not mandate adoption of any one penological theory. A sentence can have a variety of justifications, such as incapacitation, deterrence, retribution, or rehabilitation. Some or all of these justifications may play a role in a State's sentencing scheme. Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts.
Id. at 1187, 111 S.Ct. 2680 (citations omitted); see id. at 1189, 111 S.Ct. 2680 (Any "criticism is appropriately directed at the legislature, which has primary responsibility for making the difficult policy choices that underlie any criminal sentencing scheme."); Andrade, 538 U.S. at 76, 123 S.Ct. at 1175 ("[T]he governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle....").
¶ 16 The same respect for the legislative branch of government is as true of state courts as it is of federal courts. Thus we also give substantial deference to the legislature's authority to fix the punishment for a crime. See State v. Wagstaff, 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990) ("Defining crimes and fixing penalties are legislative, not judicial, functions."); id. at 492, 794 P.2d at 125 ("Proscribing conduct and determining appropriate sanctions for those who deviate from the accepted norms of conduct is purely a legislative function."); State v. Mulalley, 127 Ariz. 92, 97, 618 P.2d 586, 591 (1980) ("The judiciary ... should not interfere in [the legislative] process unless a statute prescribes a penalty `out of all proportion to the offense.'") (Quoting In re Lynch, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 930 (1972)), overruled on other grounds by State v. Noble, 152 Ariz. 284, 731 P.2d 1228 (1987).[7]
*304 ¶ 17 The Court in Solem, 463 U.S. at 292, 103 S.Ct. 3001, enunciated three factors that it considered relevant to a determination whether a sentence is grossly disproportionate to the offense and therefore constitutes cruel and unusual punishment, factors that it reiterated in Ewing, 538 U.S. at 22, 123 S.Ct. at 1186, and that were utilized by the Arizona Supreme Court in Davis, 206 Ariz. at 381 ¶ 15, 79 P.3d at 68, and by this court in State v. Long, 207 Ariz. 140, 145 ¶ 25, 83 P.3d 618, 623 (App.2004). The initial query is whether there is an inference that the sentence is grossly disproportionate to the severity of the offense. Long, 207 Ariz. at 146 ¶ 28, 83 P.3d at 624. If it is, we then compare the sentence with sentences for other offenses in Arizona (intra-jurisdictional analysis) and with the sentence imposed for the same crime in other states (inter-jurisdictional analysis). Id. at 147 ¶ 34, 83 P.3d at 625; see also Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 (stating that reviewing courts should only consider the second and third factors "in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality").
¶ 18 To answer the initial query whether there is an inference of gross disproportionality between Berger's offenses and his sentences, we consider the facts of the case and the circumstances of the offender. Long, 207 Ariz. at 145-46 ¶ 27, 83 P.3d at 623-24, (citing Davis, 206 Ariz. at 384 ¶ 34, 79 P.3d at 71). Berger was a teacher, a husband and a father. He was neither immature nor of a subnormal level of intelligence unlike the defendants in Davis, 206 Ariz. at 377, 79 P.3d 64,[8] and State v. Bartlett (Bartlett II)[9], 171 Ariz. 302, 830 P.2d 823,[10]cert. denied, 506 U.S. 992, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992). He was not "caught in the very broad sweep" of the law against sexual exploitation. Davis, 206 Ariz. at 385 ¶ 36, 79 P.3d at 72. He was, rather, a prototypical offender.[11]
*305 ¶ 19 Berger claims that his sentence is disproportionate because he was convicted of possessing child pornography and not of producing or selling it. He adds that he did not financially support the child-pornography industry because there was no evidence that he made purchases.
¶ 20 The legislature has declared its intent that the "consumer of child pornography" be penalized as "severely" as those who produce the product. See Taylor, 160 Ariz. at 420, 773 P.2d at 979; A.R.S. § 13-3553. Berger downloaded images from the internet, and, every time he visited a website, he demonstrated to the producers and sellers of child pornography that there was a demand for their product. Berger's demand served to drive the industry; there need not have been a direct monetary exchange. See Osborne, 495 U.S. at 109-10, 110 S.Ct. 1691 ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); Norris, 159 F.3d at 930 ("[T]here is no sense in distinguishing ... between the producers and the consumers of child pornography. Neither could exist without the other."); Ketcham, 80 F.3d at 793 (making criminal possession of child pornography "discourages its production by depriving would-be producers of a market."); Emond, 163 Ariz. at 142, 786 P.2d at 993 ("[D]rying up the market is the only way to effectively combat the production of child pornography.").
¶ 21 Berger maintains also that, because his possession of the pornographic images was passive and because he did not use threats or violence in the commission of his crimes, his sentence is grossly disproportionate. This logic is abstruse. As was described by this court in Hazlett, 205 Ariz. at 527 ¶ 11, 73 P.3d at 1262, and as is evident from the violent pornographic images in this case, child pornography is a form of child abuse. Thus, by Berger's support of the child-pornography industry, he supported the subornation of the child(ren). This is in contrast with the voluntary sexual intercourse involved in Davis and Bartlett II.
¶ 22 Berger claims that, because the children depicted in the images are unaware that he is in possession of or viewing their images, they are not further victimized after the image is taken. As stated above, that proposition is not true because the victimization of the child continues. "[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Norris, 159 F.3d at 929 (quoting Ferber, 458 U.S. at 759, 102 S.Ct. 3348).
¶ 23 Additionally, the possession of child pornography prompts the victimization of children other than those depicted. Berger, as a consumer of child pornography, provided an economic motive for its creation and continuation; absent such encouragement and enablement, these children would not have been abused as they were. Id. at 930; see also Osborne, 495 U.S. at 109-10, 110 S.Ct. 1691. "The crime is the abuse of the children." Hazlett, 205 Ariz. at 527 ¶ 11, 73 P.3d at 1262 (footnote omitted).
¶ 24 Berger argues that, because he had no prior convictions or history of inappropriate sexual conduct involving children, his sentence is cruel and unusual since any legislative concern regarding recidivism is not pertinent. First, to the degree that recidivism was a legislative issue, it was but one concern. See Ewing, 538 U.S. at 25, 123 S.Ct. at 1187 (multiple justifications for sentence).
¶ 25 Second, Berger does not have a criminal history because his offenses were not discovered earlier. Berger was storing files depicting graphic images of child pornography as early as 1996, and he does not protest the State's contention that, when discovered, he possessed thousands of images of child pornography. See State v. Zimmer, 178 Ariz. 407, 410, 874 P.2d 964, 967 (App.1993), cert. denied, 540 U.S. 1165, 124 S.Ct. 1179, 157 L.Ed.2d 1212 (2004) (comparing Zimmer's case to Bartlett II and finding that, although Zimmer lacked a criminal history, "he admitted numerous prior episodes of *306 nonconsensual touching involving others as well as this victim[ ]").
¶ 26 Berger also argues that the mandatory consecutive nature of his sentences renders the cumulative punishment grossly disproportionate. The compulsory nature of a sentence does not make it disproportionate per se, particularly when the trial court has discretion to impose the mitigated end of a scale, see State v. Jonas, 164 Ariz. 242, 249, 792 P.2d 705, 712 (1990),[12] and the Supreme Court has "never invalidated a penalty mandated by a legislature based only on the length of sentence[.]" Harmelin, 501 U.S. at 1006-07, 111 S.Ct. 2680; see State v. Jackson, 186 Ariz. 490, 491, 924 P.2d 494, 495 (App.1996) ("Whether mandatory prison sentences are not appropriate in every situation is a question for the law-making body, not the courts.") (Quoting State v. Molina, 118 Ariz. 250, 251, 575 P.2d 1276, 1277 (App.1978)); Zimmer, 178 Ariz. at 409, 874 P.2d at 966 (citing Harmelin, 501 U.S. 957, 111 S.Ct. 2680, for proposition that "mandatory sentencing statutes are not per se violative of the eighth amendment[ ]"). Furthermore, as the court wrote in Davis, we usually do not consider the imposition of consecutive sentences when determining proportionality. 206 Ariz. at 387 ¶ 47, 79 P.3d at 74 ("[T]his court normally will not consider the imposition of consecutive sentences in a proportionality inquiry[.]"); see United States v. Parker, 241 F.3d 1114, 1117 (9th Cir.2001) (sentence within statutory limits commonly upheld upon Eighth Amendment challenge).
¶ 27 Unlike the defendant in Davis, nothing in Berger's case "cries out for departure from that general rule." 206 Ariz. at 387 ¶ 47, 79 P.3d at 74 ("Although this court normally will not consider the imposition of consecutive sentences in a proportionality inquiry, this case cries out for departure from that general rule."). The evidence in Davis that the punishment was "so severe as to shock the conscience of society[ ]" was overwhelming, id. at 388 ¶ 49, 79 P.3d at 75, whereas in Berger's case it is not. In Davis, the State recommended mitigated sentences, the probation officer who prepared the pre-sentence report stated that the mandatory sentences were not warranted and even the victims' mothers did not want Davis to be sentenced to a long prison term. Id. at 380 ¶ 9, 79 P.3d at 67. Also, when the jurors learned of the minimum sentences, "all twelve jurors submitted a note to the trial judge stating their belief that `the punishment for the crime is excessive.' Two jurors submitted individual letters expressing their dismay and strong belief that the potential sentences for Davis were too harsh." Id. Further, upon sentencing, the trial judge entered an order allowing Davis to apply for executive clemency within ninety days of sentencing. Id. at 380 ¶ 10, 79 P.3d at 67.
¶ 28 In marked contrast to Davis' case, in Berger's case, the State recommended presumptive sentences at a minimum, and the author of the pre-sentence report did not recommend the minimum sentences but, rather, that Berger "be sentenced to less than the presumptive term for all twenty counts." The trial judge received but one post-trial letter from an anonymous juror expressing concern with the possible sentence. While the experienced judge sentenced Berger to minimum sentences, she also recognized that "the legislature has made it very clear that this is an extremely serious crime," giving her opinion without apparent reservation that the applicable sentencing range of consecutive sentences from ten to twenty-four years each was not so grossly disproportionate as to suggest to her that it was cruel and unusual punishment.[13] In this regard, she did not propose  as she could have  a special order allowing Berger to seek executive clemency. A.R.S. § 13-603(L) (Supp.2004). This is not a case with the same if any "shock" to societal conscience as was Davis.[14]
*307 ¶ 29 Considering all of the facts and circumstances, and given our deference to the legislature's decisions regarding what behavior to make criminal and the appropriate punishment, there is no inference of gross disproportionality in Berger's sentence. There is, accordingly, no need for intra- and inter-jurisdictional analyses. Long, 207 Ariz. at 147 ¶ 34, 83 P.3d at 625; see Davis, 206 Ariz. at 385 ¶ 38 n. 6, 79 P.3d at 72. The federal and state constitutional prohibitions against cruel and unusual punishment have not been violated in this case.

C. Invocation of A.R.S. § 13-4037
¶ 30 Berger asks us to exercise the authority of A.R.S. § 13-4037(B) (2001)[15] to reduce his sentence by making the twenty ten-year consecutive terms concurrent. Alternatively, he requests that we remand this case to the trial court with instructions that it sentence him to a prison term of one to ten years for each of the twenty counts.
¶ 31 An appellate court must exercise its authority under this statutory provision with great caution, State v. Fillmore, 187 Ariz. 174, 185, 927 P.2d 1303, 1314 (App.1996), and a trial court's sentence within statutory limits ordinarily will be upheld absent an abuse of its discretion, Long, 207 Ariz. at 147 ¶ 37, 83 P.3d at 625, although in Davis, the court converted Davis' crimes from dangerous crimes against children to non-dangerous offenses without an express finding that the trial court had abused its discretion. 206 Ariz. at 387-88 ¶¶ 47-48, 79 P.3d at 74-75. In light of this authority, we apply the following rule: Absent a trial court's abuse of discretion or the imposition of an unlawful sentence, we will not reduce a sentence unless such a reduction is warranted by such extraordinary circumstances as to make the sentence inconsistent with statutory intent. See State v. Levitt, 155 Ariz. 446, 448, 747 P.2d 607, 609 (App.1987) (power to modify sentence will be exercised only in extraordinary circumstances).[16] Such extraordinary circumstances do not exist in Berger's case, certainly not so much as to thwart the execution of the legislature's judgment. We therefore decline to exercise our authority to reduce Berger's sentences or to remand this case to the trial court with instructions to enter lesser sentences.

CONCLUSION
¶ 32 Berger's convictions and sentences are affirmed.
CONCURRING: PHILIP HALL, Judge.
KESSLER, J., concurring in part and dissenting in part.
¶ 33 I concur with the majority's analysis concerning equal protection and A.R.S. § 13-4037(B) (2001). I respectfully dissent from the majority's conclusions as to cruel and unusual punishment.
¶ 34 This case is not about whether possession of child pornography is a serious crime deserving of severe punishment. It is beyond peradventure that the legislature has *308 the authority to impose severe penalties for this type of crime.
¶ 35 Rather, the issue is whether parties should be given a fair opportunity to present specific evidence to permit a trial court to apply the correct legal standard under State v. Davis, 206 Ariz. 377, 79 P.3d 64 (2003), and determine whether a mandatory sentence is cruel and unusual punishment. For the reasons stated below, Morton Berger ("Berger") did not receive that opportunity. I would remand this matter for an evidentiary hearing to allow the trial court to determine whether, on the facts of this case, it is cruel and unusual punishment for a statute to require a court to sentence Berger to at least 200 years in prison without any chance of release or parole for possessing twenty images of child pornography downloaded from the Internet.
¶ 36 In many cases, the facts developed at trial and at an aggravation and mitigation hearing would be sufficient to allow a trial court and an appellate court to determine whether mandatory, minimum consecutive sentences were so extreme based on the individual facts of that case that, like Davis, such sentencing would constitute cruel and unusual punishment. Berger was not given a fair opportunity to develop that factual record and the trial court could not consider such evidence because of a confluence of two events. First, the trial court determined the constitutionality of the mandatory sentencing scheme under a now-erroneous legal standard before Davis was decided. Accordingly, it held it could not consider individual factors about this case and this defendant to determine whether the mandatory 200-year minimum sentence was cruel and unusual punishment.
¶ 37 Second, as a result of that ruling, it was fruitless for Berger to attempt to develop any factual record at sentencing. This is because such a record, under the now-erroneous standard used by the trial court, could not have been considered to determine the cruel and unusual punishment issue. Regardless of any such evidence, the statutory scheme required the trial court to sentence Berger to minimum, mandatory consecutive sentences totaling 200 years in prison without chance of parole or probation, making any mitigation hearing an exercise in futility.
¶ 38 Berger should at least have the opportunity to present evidence which might show that requiring him to live the rest of his life in prison amounts to cruel and unusual punishment. A remand would give Berger and the State an opportunity to present evidence relevant to the cruel and unusual punishment issue, give the trial court an opportunity to apply Davis and provide a complete factual record on the cruel and unusual punishment issue.
¶ 39 As I wrote in State v. Hazlett when this Court upheld the constitutionality of Arizona's basic child pornography law (A.R.S. § 13-3553 (Supp.2003)), this Court was not addressing the constitutionality of the severity of the statutory punishments for possession of child pornography. 205 Ariz. 523, 529 n. 11, 73 P.3d 1258, 1265 n. 11 (App.2003). As a matter of judicial restraint, we need not and should not reach that constitutional issue today because of the procedural setting of this case. We should not decide the constitutional issue without first allowing the parties to present sufficient facts and allowing the trial court to make sufficient factual findings. See State v. Buhman, 181 Ariz. 52, 54, 887 P.2d 582, 584 (App.1994) (appellate court will not determine constitutional issue when record lacks necessary fact finding by trial court). Compare State v. Dillon, 34 Cal.3d 441, 194 Cal.Rptr. 390, 668 P.2d 697, 700 (1983) (appellate court can determine whether punishment is grossly disproportionate and modify it on appeal when disproportionality is manifest on the record). Appellate courts generally have the trial court conduct adequate fact-finding hearings to determine whether a sentence is excessive. State v. Ramos, 133 Ariz. 4, 7, 648 P.2d 119, 122 (1982). Accordingly, I would not reach out to decide the constitutional issue today, but would remand for further proceedings in the trial court to apply Davis.

I. Proceedings Below
¶ 40 In February 2003, the trial court denied Berger's contention that the statutory sentencing scheme was cruel and unusual. The trial court properly relied on State v. *309 DePiano, 187 Ariz. 27, 926 P.2d 494 (1996), the law as it then existed, and concluded it could not analyze the constitutional argument based on the particular facts of this crime and this particular offender without violating DePiano:
However, the Supreme Court [in DePiano] clearly stated[:]
"But we disapprove of that part of Bartlett II that concludes that Justice Kennedy's analysis would require an examination of the facts and circumstances of the particular crime and the particular offender. We agree with the minority in Bartlett II that the initial threshold disproportionality analysis is to be measured by the nature of the offense generally and not specifically.["] [187 Ariz. at 30, 926 P.2d at 497.]
In the instant case, defendant Berger asks this Court to look at the specific facts of his case and to determine that the sentence he would be facing [a minimum of 200 years without chance of parole] is cruel and unusual punishment. Such an analysis would be in direct violation of the Arizona Supreme Court's decision in DePiano. Based on the above analysis, therefore, this Court will use Justice Kennedy's method of analysis and look at the nature of the offense generally, not specifically.
¶ 41 In applying the DePiano standard, the trial court held that generally the sentencing range from ten to twenty-four years under A.R.S. § 13-604.01 (Supp.2003) for violation of A.R.S. § 13-3553 was not so grossly disproportionate as to require it to find cruel and unusual punishment. Nor, it held, did consecutive sentencing per se amount to cruel and unusual punishment, citing State v. Jonas, 164 Ariz. 242, 245, 792 P.2d 705, 708 (1990).

II. Effect of State v. Davis
¶ 42 While this case was pending on appeal, the Arizona Supreme Court decided Davis. It overturned a crucial aspect of DePiano by requiring an analysis of gross disproportionality of the sentence based on the specific facts in the case. Importantly, it also explained that mandatory consecutive sentences can amount to cruel and unusual punishment when the length of the sentence is so extreme, given those individual factors, that the sentence shocks society's conscience. We are bound to follow the law as articulated by our supreme court as it exists now, even though Davis was decided after the trial court's decision. Arnold v. Knettle, 10 Ariz.App. 509, 511, 460 P.2d 45, 47 (1969). Cf. Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) (appellate court must follow law in effect at time it renders its decision unless it would result in manifest injustice or there is a statutory directive otherwise).
¶ 43 As the Davis court explained, a three-part test for cruel and unusual punishment still applies,[17] but the first element-an inference of gross disproportionality-must be based on the specific facts as to the nature of the crimes, the defendant and his conduct. 206 Ariz. at 383-84 ¶¶ 31-34, 79 P.3d at 70-71. Underpinning the Davis approach is the concept that, while a legislature can substantially limit a judge's sentencing discretion by requiring mandatory consecutive sentences, such a limitation is unconstitutional in those rare cases in which the mandatory minimum sentence is so extreme as to shock society's conscience. Id. at 387-88 ¶ 47, 79 P.3d at 74-75. As the Davis court explained, it is the combination of mandatory and consecutive sentences which may render the sentence so extreme given the individual facts as to shock society's conscience. Davis, 206 Ariz. at 387-88 ¶ 47, 79 P.3d at 74-75.

III. The Need for An Evidentiary Hearing to Apply Davis
¶ 44 The question then becomes whether, like Davis, the mandatory minimum consecutive sentence of 200 years without chance of parole "cries out" for departure from the general rule. While the majority concludes that it does not, I conclude that we cannot make that determination without a more complete factual record. As explained below, this insufficient factual development is of no *310 small matter. The trial court should have the opportunity to consider specific facts and decide under Davis whether such a mandatory minimum sentence on the facts of this case constitutes cruel and unusual punishment.

First Davis Factor: Inference of Gross Disproportionality
¶ 45 In Davis, the supreme court stated that the analysis of an inference of gross disproportionality has to be based on the facts of the individual case, the individual offender, and the offender's risk to society. Davis, 206 Ariz. at 383-84 ¶¶ 31-34, 79 P.3d at 70-71. Accord State v. Bartlett, 171 Ariz. 302, 306-08, 830 P.2d 823, 827-29 (1992) (court should look to harm caused or threatened to the victim or society and the culpability of the offender, including the absence of any violence and lack of criminal record).[18] This view is consistent with courts in other juris-dictions, which also look to these factors as well as a defendant's potential to contribute to society. Dillon, 194 Cal.Rptr. 390, 668 P.2d at 720 (in determining gross disproportionality, court will look to both nature of offense and/or the offender, with particular regard to the degree of danger present to society); In re Lynch, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921, 939-40 (1972) (indeterminate life maximum sentence for second offense of indecent exposure cruel and unusual given, in part, defendant's superior intellect and great potential); Wilson v. State, 830 So.2d 765, 778 (Ala.Crim.App.2001) (first prong of disproportionality test includes factors such as circumstances of the crime, harm caused to victim or society, culpability of offender and offender's motive in committing the crime).
¶ 46 The need for adequate factual development to apply Davis is highlighted by Justice McGregor's explanation that determining gross disproportionality necessarily involves fact-finding, a process that is best left to the trial court. Davis, 206 Ariz. at 393 ¶ 79, 79 P.3d at 80 (McGregor, J., dissenting in part). In most cases, as in Davis, the record of the trial and any mitigation/aggravation hearing should suffice to present evidence on these factors. In cases like this one, however, when the now-erroneous DePiano standard made meaningless any presentation and consideration of many of the facts relevant to determining gross disproportionality, further fact-finding is needed.
¶ 47 As the Supreme Court stated in Davis, there are a number of factors which a court can examine to determine if there is an inference of gross disproportionality. 206 Ariz. at 384-85 ¶ 36, 79 P.3d at 71-72. Nothing in Davis implies that list is exclusive. As shown by the following chart, some of the same undisputed factors utilized in Davis support a finding that the 200-year mandatory minimum sentence here is cruel and unusual, while some of those factors do not support such a conclusion.

 Davis Berger
Convicted of four charges of sexual conduct Convicted of twenty counts of possession of
with a minor, thirteen years minimum sentence child pornography (sexual exploitation of a
each, no chance of parole, to be served minor), ten years minimum sentence each,
consecutively no chance of parole, to be served
 consecutively
----------------------------------------------------------------------------------------------------
1. Defendant did not commit the crimes with 1. There is no evidence Berger committed
any violence. any violent acts.
----------------------------------------------------------------------------------------------------
2. No prior record. 2. No prior record.
----------------------------------------------------------------------------------------------------
3. Post-pubescent conduct of victims common 3. Victims'"conduct" in no way makes them
and may have encouraged crime. culpable.[19]

*311
----------------------------------------------------------------------------------------------------
4. Defendant had below average intelligence 4. Defendant was a high school teacher.
or maturity.
----------------------------------------------------------------------------------------------------
5. Caught in broad sweep of statute. 5. Caught in broad sweep of statute  violation
 of A.R.S. § 13-3553 involves not only
 the possession of child pornography but also
 the distribution and making of such material,
 aggravated assault, molestation, child
 abuse, and kidnapping. Under A.R.S. § 13-604.01(D),
 same mandatory minimum and
 consecutive sentences apply.
----------------------------------------------------------------------------------------------------
6. Trial judge, jurors, presentence report 6. One juror thought sentence would be
and prosecutor all favored minimum sentence, excessive. Trial judge ordered minimum
the lower court issued special clemency mandatory sentence. No clemency order
order. requested or ordered and presentence report
 did not find sentencing range excessive.

¶ 48 The trial court never had the opportunity to weigh these factors under Davis. More importantly, the need for fact-finding here is underscored by the lack of any evidentiary hearing regarding several other factors. First, both in the trial court and on appeal, the State attempted to portray Berger as a constant consumer of child pornography as purportedly reflected by his allegedly having thousands of "hits" on his computer for child pornography or allegedly having thousands of illegal images in his possession. The record does not support that Berger possessed thousands of illegal images or thousands of "hits". Nor was there evidence of how many times Berger searched the Internet for pornography[20] or how many sites he visited. Other than the twenty images he was convicted of, there is no evidence of how many images of actual child pornography he possessed.[21] This is not to minimize either the repulsive nature of the images he did possess or their numbers. The number and nature of the possessed images are only two factors bearing on whether twenty, ten-year mandatory consecutive sentences without chance for release constitutes cruel and unusual punishment.
¶ 49 Second, remanding for an evidentiary hearing relating to gross disproportionality would allow the court for the first time to explore both Berger's risk and potential of contributing to society. Dillon, 194 Cal.Rptr. 390, 668 P.2d at 720-21; Lynch, 105 Cal.Rptr. 217, 503 P.2d at 939-40. At the time of its ruling on the constitutional issue, the trial court was not even aware of a risk assessment  evidence that is relevant to determine whether a sentence may be grossly disproportionate. Long, 207 Ariz. at 146 ¶ 30, 83 P.3d at 624. The assessment was mentioned only in passing during the sentencing hearing. The specific contents of that assessment were never presented to the trial court.
¶ 50 That assessment, albeit without a chance for the State to rebut it, presents what is purported to be an expert opinion that Berger was a productive member of society (an award-winning teacher) with no prior criminal record, that he acted out of a collection compulsion and that he posed no risk of repeating his conduct or of acting out toward children.
*312 ¶ 51 The majority correctly points out that the assessment was not part of the record on appeal and was only filed with this Court at the Court's request. However, I am not relying on the risk assessment itself to conclude the sentence was cruel and unusual punishment. Rather, the point I am making is that if there had been an effective evidentiary hearing to apply the Davis factors, the evidence in the assessment could have been introduced and the trial court might have found the mandatory 200-year sentence was cruel and unusual punishment.
¶ 52 An evidentiary hearing would allow the trial court to apply Davis in light of these and other factors such as the number of images, the circumstances surrounding the crime including the motive, the absence of any evidence he ever purchased any of the images, the manner in which it was committed and the consequences of the Berger's conduct as well as his age, prior record, risk to society, potential to contribute to society, and personal characteristics and state of mind. Bartlett, 171 Ariz. at 306-08, 830 P.2d at 827-29 (court should consider circumstances of crime including any nonviolent nature as well as lack of any prior record); Dillon, 194 Cal.Rptr. 390, 668 P.2d at 720-22; Lynch, 105 Cal.Rptr. 217, 503 P.2d at 939-40. In making any such determination, not only should the punishment fit the crime, but it should fit the criminal. Dillon, 194 Cal.Rptr. 390, 668 P.2d at 721 (quoting Lynch, 105 Cal.Rptr. 217, 503 P.2d at 921).
¶ 53 This lack of a complete record is crucial to determining cruel and unusual punishment. One of the purposes of Davis is to isolate those cases in which the sentence would truly shock the conscience of the community. 206 Ariz. at 388 ¶ 39, 79 P.3d at 75. The mandatory nature of the minimum 200-year sentence here contrasts with the fact that our sentencing statutes have authorized much more lenient sentences for direct crimes of violence, including:
 Placing a defendant on probation without any imprisonment for killing another after the defendant was found guilty of leaving the scene of a fatal accident;[22]
 Imposing 9.5 years' imprisonment upon a driver who cut a young girl in half with his car while she crossed the street after the defendant was found guilty of negligent homicide and leaving the scene of a fatal accident which he did not cause;[23] and
 Imposing concurrent sentences amounting to no more than twenty years for second degree murder, three aggravated assault counts and three endangerment counts after the defendant went on a shooting spree killing one person and injuring several others.[24]
¶ 54 This is not to say that the sentences in those other cases were too lenient because they are based on the facts of each case. Rather, the fact that the statutes give judges discretion in those cases to impose such sentences based on extenuating circumstances despite the nature of such crimes highlights the fact that the statute here prohibits such discretion and requires mandatory, flat consecutive sentences regardless of any extenuating circumstances.
¶ 55 The majority seeks to avoid any such remand and fact-finding in several ways. First, like the trial court, the majority cites to Jonas, 164 Ariz. at 245, 792 P.2d at 708, decided before Davis, for the principle that mandatory consecutive sentences do not constitute per se cruel and unusual punishment. By doing so, the majority implies that even if the mandatory minimum sentences were lower, either those sentences still would have to be served consecutively or we can only look at the separate sentences for each image, not the totality of the required sentence. The majority also cites to Davis for the proposition that consecutive sentencing is normally not considered in determining disproportionality.
¶ 56 However, that conclusion takes the language from Davis out of context. The *313 core issue here is that for each image Berger possessed, the trial judge was statutorily required to impose a minimum ten-year sentence to be served consecutively, thus requiring a 200-year minimum sentence. As our Supreme Court explained in Davis, while normally a court will not consider consecutive sentences as part of a proportionality review, it is exactly the combination of minimum mandatory sentences and mandatory consecutive sentencing which can create the inference of gross disproportionality:
Although this court normally will not consider the imposition of consecutive sentences in a proportionality inquiry, this case cries out for departure from that general rule.... It is in part because judges in Arizona have no discretion regarding the minimum sentence and must impose consecutive sentences that this sentence fails the proportionality test.... Therefore, to ignore the requirement that the sentences be served consecutively would be to ignore one of the causes of the disproportionality. We recognize the legislature's right to impose a thirteen-year minimum sentence ... and to require that the sentences be served completely. We also recognize the legislature's right to require consecutive sentences for this type of offense. We cannot, however, uphold a sentence that becomes unconstitutionally disproportionate to the crimes committed because the sentences are mandatorily lengthy, flat, and consecutive.

Davis, 206 Ariz. at 387-88 ¶ 47, 79 P.3d at 74-75. (Emphasis added.)
¶ 57 Again, there is no issue that Berger was deserving of punishment for this crime. The issue is whether, before requiring Berger to die in prison, the parties and the trial court should have the opportunity to develop and consider evidence about the nature of the crime and of Berger's risk to society before determining whether a mandatory 200-year consecutive sentence without chance of parole may be so grossly disproportionate to the specific facts as to render such a requirement unconstitutional. If so, a court may impose a different sentence pursuant to A.R.S. §§ 13-702, -702.01 and -702.02 (2001), which is not necessarily flat or consecutive. Davis, 206 Ariz. at 387 ¶ 48, 79 P.3d at 75.
¶ 58 Second, the majority contends that the record shows that, unlike Davis, there is no overwhelming evidence to show an inference of gross disproportionality or that a mandatory 200-year sentence would shock society's conscience, characterizing Berger as a prototypical offender. The majority does not cite any authority that only overwhelming evidence can prove an inference of gross disproportionality. Clearly Berger was not an innocent user of the Internet who accidentally downloaded prohibited images. However, the characterization of Berger as a prototypical offender is not based on any standard or definition. As noted above, the record does not show that Berger possessed "thousands" of illegal images or his computer had "thousands" of hits. Even though Berger had numerous images, there is still an insufficient record to help us because there was no evidentiary hearing to determine these and other factors relevant to a finding of cruel and unusual punishment.[25] Moreover, there was an insufficient opportunity for Berger to put on such a record.
¶ 59 Finally, the majority contends that the experienced trial judge held the applicable sentencing range was not such as to suggest that it was cruel and unusual punishment. In fact, the trial court determined that the sentencing range was not cruel and unusual punishment under DePiano, which prohibited it from considering whether the required consecutive terms were unconstitutional under the facts of a particular case. That is exactly why a remand for an evidentiary hearing to apply Davis to the facts of this case and this defendant is needed.
¶ 60 By concluding that no further evidentiary hearings are needed, the majority seems to imply that absolutely no set of facts *314 could ever lead to an inference that effectively sentencing Berger to die in prison for possession of twenty images from the Internet is cruel and unusual punishment. Although there may be cases in which the defendant has been given an opportunity to present evidence as to the Davis factors and a remand is not needed, this is not one of those cases. As a matter of judicial restraint, I prefer to allow parties to present facts in light of Davis and to permit the trial court to make a full determination of whether the statutorily-required penalty here shocks the conscience.

Second Davis Factor: Intra-Jurisdictional Comparison
¶ 61 The majority limits its analysis of cruel and unusual punishment to the first part of the Davis test. Despite its importance, turning to the second and third parts may help us validate any concern we have about gross disproportionality. Davis, 206 Ariz. at 385 ¶ 38 and n. 6, 79 P.3d at 72 and n. 6 (second two parts of intra- and inter-jurisdictional analysis are not required "[b]ut we agree with the Supreme Court's suggestion that such an inquiry might validate the court's initial impression of gross disproportionality.").
¶ 62 An intra-jurisdictional comparison shows that possession of child pornography is punished either more severely or similarly to crimes involving more direct physical injuries to the victims. For example, the Davis court pointed out that second-degree murder, sexual assault, and continuous sexual abuse against a child under fifteen would receive the same presumptive sentence as in that (and this) case. 206 Ariz. at 385-86 ¶ 39, 79 P.3d at 72-73. Additionally, persons accused of kidnapping, child abuse, and aggravated assault would be eligible for a ten-year minimum sentence per count. Id. Therefore, the crimes compared in Davis are "seemingly more dangerous crimes than Davis' [and certainly more dangerous than Berger's, yet] carry a lesser presumptive sentence" and can be mitigated to a lesser minimum sentence than the ten-year minimum sentence per count here. Davis, 206 Ariz. at 385-86 ¶ 39, 79 P.3d at 72-73.
¶ 63 The State compares the sentencing here to crimes involving violence directly upon a victim. For example, attempted first-degree murder of a child under twelve results in a life sentence with possible parole after thirty-five years. Yet possession of two forbidden images results in a greater punishment: a mandatory, flat, minimum sentence of forty years without chance of parole.

Third Davis Factor: Inter-Jurisdictional Comparison
¶ 64 Berger has provided us with a survey of all fifty states demonstrating that Arizona has the highest possible sentencing range in the entire United States for possession of child pornography. The fact that other states punish child pornography possession less severely than Arizona does not make Arizona's sentencing scheme unconstitutional. The separation of powers doctrine ensures that our legislature is free to require severe sentences for this type of crime. However, this type of comparison can validate an inference that the mandatory minimum consecutive sentencing scheme is so grossly disproportionate to the facts in a specific case as to be cruel and unusual punishment.
¶ 65 Our independent review of those statutes shows that: (1) three states do not criminalize possession of child pornography;[26] (2) seven states treat it as a misdemeanor or have a maximum sentence of twelve months;[27] (3) twenty-one states have a maximum sentence of eight years with probation eligibility;[28] (4) eight states have a maximum sentence of ten years with eight of those allowing for probation;[29] (5) two states *315 have a maximum sentence of fifteen years, but allow for probation;[30] (6) three states have a maximum sentence of twenty years but allow for probation;[31] and (7) one state has a maximum sentence of five years with the provision that possession of each image constitutes a separate offense.[32] While we do not know from those statutes whether any of those states require consecutive sentences per image, we do know that at least one state (Connecticut) breaks down the prison sentence by the number of images possessed, making it a class B felony for possession of fifty or more images, a class C felony for twenty-fifty images and a class D felony for less than twenty images.

IV. Conclusion
¶ 66 While Berger was convicted of a crime abhorred by society and deserving of punishment, he still should be given an opportunity to present evidence that sentencing him to spend the rest of his life in prison when he may pose no further risk to society is so cruel and unusual as to shock society's conscience. We cannot tell from the current record whether effectively sentencing Berger to die in prison for possessing twenty forbidden images, taken from the Internet, amounts to cruel and unusual punishment. Given the penalty in this case, fundamental fairness requires that Berger and the State have an opportunity to present evidence on this issue and the trial court have an opportunity to consider whether the specific facts might render the statutorily mandated sentence cruel and unusual.
¶ 67 It is very possible that at such a hearing, Berger will not develop sufficient facts to show that the sentence in this case is grossly disproportionate to the crimes involved and to the nature of the defendant. However, he should be given one fair opportunity to make his case before having to spend the rest of his life in prison. I would remand this matter to the trial court for hearings on the underlying facts in light of Davis.[33]
NOTES
[1] A. A person commits sexual exploitation of a minor by knowingly:

* * *
2 .... possessing ... any visual depiction in which a minor is engaged in exploitive exhibition or other sexual conduct.
[2] The Eighth Amendment and Article 2, § 15, are virtually identical. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," whereas in the Arizona Constitution the singular "punishment" is used. In State v. Davis, 206 Ariz. 377, 380-81 ¶ 12, 79 P.3d 64, 67-68 (2003), cert. denied, ___ U.S. ___, 124 S.Ct. 2097, 158 L.Ed.2d 723 (2004), the Arizona Supreme Court considered whether Arizona's constitutional prohibition against cruel and unusual punishment provided greater protection than its federal counterpart, but it found no compelling reason to so find and neither do we.
[3] The court in DePiano favored an Eighth Amendment approach that did not analyze the particular circumstances of the crime or the offender. After Berger's sentencing, DePiano was overruled in Davis, 206 Ariz. at 384 ¶ 34, 79 P.3d at 71.
[4] The former is a class 2 felony, A.R.S. § 13-3553(C), while the latter is a class 6 felony. A.R.S. § 13-1402(B) (2001).
[5] It is more than legitimate for the legislature to so distinguish between the offenses of possession of child pornography, a class 2 felony, and indecent exposure, a class 6 felony; indeed, there is no parallel. The crime of indecent exposure has been denominated by the legislature as a lesser felony because the act, while intentional, is performed with a reckless disregard to the nature of the offense. The possession of images in which children perform or adults respond to children with acts of indecent exposure is a societal harm of a proportionately greater degree.
[6] Berger contended that A.R.S. § 13-3553 is unconstitutionally overbroad, but he since has conceded that this issue was addressed and rejected in Hazlett, 205 Ariz. 523, 73 P.3d 1258.
[7] The exercise of judicial restraint in a case such as this is not, as the dissent would have, another judicial hearing when the trial court already has imposed the minimum and mitigated sentence passed by the legislature, but the deference to which the judicial branch owes the legislative and executive branches. Indeed, the propriety and constitutional necessity of this deference is well illustrated by the subjectivity of the dissent's careful few selections from memorandum decisions of this court of criminal cases, cases that even as presented do not have a sufficient context in which to evaluate the relationship among the criminal, the crime, the sentence and the myriad of other criminal cases decided by the courts of this state.

The correctness of deference also is illustrated by the Eighth Amendment opinions of the United States Supreme Court in Ewing, 538 U.S. 11, 123 S.Ct. 1179, and Andrade, 538 U.S. 63, 123 S.Ct. 1166, in which cases the Court addressed the California "three strikes law" to the general effect that an individual who commits a third offense will be confined to prison for the rest of his life. After a criminal history largely comprised of theft and burglary, Ewing's third strike was the theft of three golf clubs. Andrade's third strike was two separate thefts of videotapes, five tapes worth $84.70 and four tapes worth $68.84.
[8] The Arizona Supreme Court found that the sentence of imprisonment for fifty-two years without the possibility of parole or early release for Davis, a twenty-two year-old defendant, grossly disproportionate to the offenses, four counts of sexual misconduct with a minor, dangerous crimes against children. 206 Ariz. at 379-80 ¶¶ 1, 7, 79 P.3d at 66-67. Davis' sexual misconduct involved having voluntary sexual intercourse with two post-pubescent teenage girls. Id. at 379 ¶¶ 2-3, 79 P.3d at 66. In so finding, the court considered the following factors: lack of threatened or actual violence, the victims' willingness to participate in the sexual acts (even though they could not lawfully consent to the acts), lack of a criminal record, the fact that post-pubescent sexual conduct was not uncommon, Davis' lower intelligence and maturity level than that of other young adults, and the broad sweep of the laws that constitute dangerous crimes against children. Id. at 384-85 ¶ 36, 79 P.3d at 71-72.
[9] We recognize that Bartlett II was overruled by DePiano, 187 Ariz. at 30, 926 P.2d 494, when the DePiano court determined "the initial threshold disproportionality analysis is to be measured by the nature of the offense generally and not specifically." However, the holding in Bartlett II was essentially reinstated when Davis, 206 Ariz. 377, 79 P.3d 64, effectively overruled DePiano on the same issue.
[10] The Arizona Supreme Court found that the sentence of imprisonment for forty years without the possibility of parole or early release for Bartlett, a twenty-three year-old defendant, grossly disproportionate to the offenses, two counts of sexual conduct with a minor, dangerous crimes against children. 171 Ariz. at 303, 306, 311, 830 P.2d at 824, 827, 832. Bartlett's sexual misconduct involved having voluntary sexual intercourse with two post-pubescent teenage girls. Id. at 306, 830 P.2d at 827. In so finding, the court considered all of the same factors that it considered in Davis, 206 Ariz. at 384-85 ¶ 36, 79 P.3d at 71-72, with the exception of the last factor, as well as Bartlett's lack of intent to physically or emotionally harm the girls, the evolution of the law and the sentencing standards at the time. Id. at 307-09, 830 P.2d at 828-30.
[11] While the number of images that were found in Berger's house could not be quantified, the evidence was not disputed that Berger maintained files of images of child pornography at his house, some literal and some on his computer in a directory entitled "Mort's stuff" that itself included several subdirectories filled with graphic images of child pornography, photographs and video. In its motion to dismiss fifteen of the thirty-five counts of the indictment, the State gave as its reason its wish to spare the jury the sights of more disturbing images, and, in fact, Berger does not dispute the State's assertion on appeal that he had a "well-organized collection of thousands of photographs depicting children engaged in sexual activity."
[12] Nothing in the Davis opinion changes this aspect of the analysis in Jonas contrary to the suggestion of the dissent.
[13] Of course, any conclusion about a constitutional violation is a matter of law that is decided de novo by this court, making the trial court's determination legally irrelevant.
[14] The dissent mentions that Berger ostensibly has some compulsion from childhood to collect sets of images. First, the images that are the subject of his convictions are not mere "photographic images"; Berger possessed child pornography. Second, the risk-assessment report in which this impulse is mentioned is not a part of the record, suggesting that its genesis made it inappropriate to include for sentencing purposes because, were it not, either the experienced trial counsel or the experienced trial judge or the author of the pre-sentence report could  and one of them undoubtedly would  have asked that it be made a part of the record.
[15] Section 13-4037(B) provides:

Upon an appeal from the judgment or from the sentence on the ground that it is excessive, the court shall have the power to reduce the extent or duration of the punishment imposed, if, in its opinion, the conviction is proper, but the punishment imposed is greater than under the circumstances of the case ought to be inflicted. In such a case, the supreme court shall impose any legal sentence, not more severe than that originally imposed, which in its opinion is proper. Such sentence shall be enforced by the court from which the appeal was taken.
[16] Although the trial court relied upon the analysis in DePiano, 187 Ariz. at 30-31, 926 P.2d at 496-97, which subsequently was overruled in Davis, 206 Ariz. at 384 ¶ 34, 79 P.3d at 71, the court could not have given Berger less than the sentences that it imposed, consecutive mitigated prison terms of ten years without early release or pardon. Even had it held the opinion that the cumulative sentence constituted cruel and unusual punishment, this court, when confronted with the issue, would have reviewed it de novo as a matter of law.
[17] The three part test is whether there is an inference of gross disproportionality, and, if so, whether intra  and inter  jurisdictional analyses validate that inference. Davis, 206 Ariz. at 385 ¶ 38, 79 P.3d at 72.
[18] DePiano disapproved Bartlett, deciding that courts could not examine the individual facts of any case to determine gross disproportionality as applied to that case. DePiano, 187 Ariz. at 30, 926 P.2d at 497. However, our supreme court in Davis disapproved of DePiano on that point, resurrecting the principles addressed in Bartlett. State v. Long, 207 Ariz. 140, 145 ¶ 25, 83 P.3d 618, 623 (App.2004).
[19] Thus, application of Davis here lacks what Justice McGregor characterized as the "most disquieting feature" of Davis  comparing the relative culpability of the victims and the defendant. 206 Ariz. at 392-93 ¶¶ 76-78, 79 P.3d at 79-80 (McGregor, J., dissenting).
[20] This fact is relevant because our Supreme Court has stated that consecutive sentencing might be inappropriate when forbidden images were obtained at one time and were simply copied and not photographed by the defendant. State v. Taylor, 160 Ariz. 415, 420, 773 P.2d 974, 979 (1989).
[21] The State initially charged Berger with possession of thirty-five forbidden images, but voluntarily agreed to dismiss fifteen of those counts. The State's evidence about "thousands" of "hits" or "images" referred to a computer-driven process creating "fragments" for each website which had a certain word in its description. Those fragments did not reflect how many times Berger searched the Internet, how many sites he visited or how many images he had. Thus, when the jury asked the trial court how many images were found in Berger's house, even the prosecutor agreed that question "can't" be answered.
[22] State v. O'Brien, CR XXXX-XXXXXX (Maricopa County Superior Court, Minute Entry of March 26, 2004).
[23] State v. Torre, 1 CA-CV 03-0029 (Ariz.App. Dec. 26, 2003) (mem.decision).
[24] State v. Garnica, 1 CA-CR 02-0832 (Ariz.App., Sept. 28, 2004) (mem.decision).
[25] The majority asserts that every time Berger visited a website containing prohibited images or downloaded such images, he "demonstrated to the producers and sellers of child pornography that there was a demand for their product." However, there was no evidence he purchased any of the images or that any websites he visited kept track of how many persons visited the website. These factors could be explored at an evidentiary hearing on remand.
[26] Hawaii, Nebraska and Ohio.
[27] California, Colorado, Iowa, Kentucky, Maine, Maryland and North Dakota.
[28] Delaware, Illinois, Indiana, Kansas, Massachusetts, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New York, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Virginia, Vermont, Washington, West Virginia and Wisconsin.
[29] Alabama, Alaska, Arkansas, Louisiana, Montana, South Carolina, South Dakota and Texas.
[30] Idaho and Utah.
[31] Connecticut, Georgia and Mississippi.
[32] Florida.
[33] Such a factual inquiry could also lead the trial court to consider entering a special order allowing Berger to petition the Board of Executive Clemency for a commutation of sentence, an order which was not requested before. See A.R.S. § 13-603(L) (Supp.2002) (allowing such an order if the judge believes "that a sentence that the law requires the court to impose is clearly excessive.").